[Civ. No. 15299. Third Dist., Aug. 18, 1976.]

PATRICIA J., a Minor, etc., et al., Plaintiffs and Appellants, v.
RIO LINDA UNION SCHOOL DISTRICT et al., Defendants and
Respondents.

**COUNSEL**

Sinclair & Mitchell, William J. Mitchell and Larry P. Sinclair for Plaintiffs and Appellants.

Dormeyer, Simmons, Shade & Kendall, William H. Shade, Tweedy, Ferris & Duncan, Jerry M. Duncan, Fitzwilliam Memering, Stumbos, DeMers, Ford & Norris and Roberta Franklin for Defendants and Respondents.

**OPINION**

EVANS, J.—Plaintiffs John and Angie J., as guardians ad litem for Patricia J., appeal from judgments following an order sustaining without leave to amend the demurrer of the County of Sacramento and orders granting judgment on the pleadings to the Sacramento City and Rio Linda Union School Districts. The sole issue on appeal is whether governmental immunity for injuries caused by or to a "prisoner" conferred by Government Code section 844.6 extends to injuries caused by a minor who has been adjudged a ward of the juvenile court and placed in the custody of his parent.

The facts are not in dispute and appear from the judgment roll.

In June 1973, Lawrence C. was found to have committed robbery and unlawful sexual intercourse (Pen. Code, §§ 211, 261.5), and was made a ward of the juvenile court under Welfare and Institutions Code section 602. He was committed to the custody of his mother and placed under supervision by the Sacramento County Probation Department. In August 1973, the Sacramento City School District as administrator of the "Neighborhood Youth Program" found employment for Lawrence in Rio Linda Union School District as an assistant custodian at the Orchard School. The work was not ordered or directed as a part of the wardship proceeding. At the outset of his employment and while engaged in his duties at the Orchard School, Lawrence enticed Patricia J., a seven-year-old girl, into a restroom at the school and raped her, infecting her with gonorrhea in the process.

In September 1974, following rejection of claims against the governmental entities, Patricia's parents filed a complaint on her behalf against Lawrence, the Rio Linda Union School District, the Sacramento City School District, and the County of Sacramento. The complaint charged that the governmental entities knew or should have known that Lawrence had a prior juvenile criminal record, including rape and other illicit sexual conduct. It alleged that the Rio Linda Union School District negligently hired Lawrence and placed him where he constituted a danger to minor children; that the Sacramento City School District negligently failed to control the minor or warn the general public of his sexual propensities; and that the County of Sacramento negligently failed to exercise proper control or supervise him, and that they further failed to warn the school districts of his past record and the potential danger he presented.

The County of Sacramento demurred on the ground that a public entity is not liable for injuries caused by prisoners. The demurrer was sustained without leave to amend, and a judgment of dismissal was ultimately entered; both school districts answered and moved for judgment on the pleadings asserting the same grounds as did the county by its demurrer. The motions were granted and judgments of dismissal entered.

█ Preliminarily, defendant County of Sacramento contends that the judgment of dismissal entered against it is not appealable; it argues that because the judgment was entered upon motion of plaintiffs, it was a "voluntary" dismissal within the meaning of Code of Civil Procedure

section 581, subdivision 1,[1] and is therefore nonappealable. (See Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 58, pp. 4073-4074.)

The county was ordered to prepare the order and notice of order sustaining its demurrer; the notice was prepared immediately but not the order. Approximately one month later, plaintiffs prepared the order sustaining the demurrer which dismissed the complaint as to the county and caused it to be signed and filed.

Code of Civil Procedure section 581, subdivision 3,[2] provides for dismissal by either party in circumstances as here presented.

The subdivision authorizes dismissals after a demurrer is sustained without leave to amend upon motion of *either* party. The mere fact that the moving party is the plaintiff does not make a judgment of dismissal "voluntary" and nonappealable. Plaintiffs were required to prepare the order sustaining a demurrer and dismissing the complaint in order to establish their right of appeal. (See Witkin, *supra,* § 64, p. 4078.) The argument urged by the county borders upon the frivolous, and is viewed with disfavor by this court.

The substance of the appeal is directed to the trial court's extension of governmental immunity to the defendants.

California tort claims statutes render governmental entities generally liable for the negligence of employees acting in the scope of their employment. (Gov. Code, § 815.2.) However, Government Code section 844.6[3] dealing with police and correctional activities, provides immunity for injuries caused by a "prisoner." In pertinent part that section reads: "(a) Notwithstanding any other provision of this part, . . . a public entity is not liable for: (1) An injury proximately caused by any prisoner. (2)

[1]Code of Civil Procedure section 581, subdivision 1, provides in part: "An action may be dismissed in the following cases: "1. By plaintiff, by written request to the clerk, filed with the papers in the case, or by oral or written request to the judge where there is no clerk, at any time before the actual commencement of trial, upon payment of the costs of the clerk or judge; . . ."

[2]Code of Civil Procedure section 581, subdivision 3, provides: "3. By the court, when either party fails to appear on the trial and the other party appears and asks for the dismissal, or when a demurrer is sustained without leave to amend, or when, after a demurrer to the complaint has been sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court, and either party moves for such dismissal."

[3]Hereafter, unless otherwise noted, all code section references shall be to the Government Code.

An injury to any prisoner." We are called upon to determine whether the term "prisoner" as used encompasses a juvenile court ward committed to the custody of his parent and not retained in custodial detention.

Government Code section 844 provides the fundamental definition of the term "prisoner" from which our inquiry flows: "As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility." Appellate courts, since the adoption of that section, have struggled with its meaning; some have said the section is exhaustive and that the word "prisoner" means only inmates of an institution under restraint (*Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91, 97 [94 Cal.Rptr. 466]), while others have sought to ascribe an expansive meaning to the section because of the use of the word "includes." (*Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 658 [69 Cal.Rptr. 788].)

Some definitions of the word "prisoner" assist in our inquiry: "[A] person serving a sentence of imprisonment in a state prison is, in contemplation of law, a prisoner therein, as well when at work outside under the surveillance of prison guards as when confined within its walls, . . ." (*Bradford* v. *Glenn* (1922) 188 Cal. 350, 351 [205 P. 449]; *People* v. *Vanderburg* (1924) 67 Cal.App. 217, 219 [227 P. 621].) "The term 'prisoner' is commonly used in law to designate a person in legal custody charged with some crime or public offense, . . ." (*People* v. *Mackie* (1929) 100 Cal.App. 292, 293 [279 P. 821].) One who is deprived of his liberty; one who is against his will kept in confinement or custody. (*U.S.* v. *Curran* (1924) 297 F. 946, 950.) "A person restrained of his liberty upon any action, civil or criminal, or upon commandment." (Black's Law Dict. (rev. 4th ed. 1968.) "A person held under restraint." (Webster's Third New Internat. Dict. (1969).)

Civil Code section 13 provides a basic rule of statutory construction as follows: "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition."

Also, the meaning of particular words or phrases may depend upon the company they keep. We therefore examine the provisions of the article embracing Government Code section 844 to determine other

usage of the word "prisoner." In Government Code chapter 3 entitled "Police and Correctional Activities" we find that all sections utilize the term "prisoners" as one describing confined persons; section 845.4 deals with interference with a "prisoner's" right of legal review of his confinement; section 845.6 refers to furnishing medical services to a "prisoner" in custody; section 845.8 limits liability of a public entity or a person employed by the public entity for damage caused by a "prisoner" while escaping from confinement or custody of the employee.

In 1970, the Legislature saw fit to expand the scope of immunity for damage caused by an escaping "prisoner" to include an escaping arrested person and an escaping person resisting arrest. (§ 845.8 as amended Stats. 1970, ch. 1099, p. 1958.)

The legislative comment to section 844 provides some insight into the intended meaning of the term "prisoner" as used in that section. The comment reads: "A person in the custody of a law enforcement officer but undergoing medical treatment in a county hospital would be considered a prisoner as defined in this section. The work camps for prisoners would be considered penal or correctional facilities. Although a prisoner or ward of the juvenile court engaged in fire suppression would be considered a prisoner as defined in this section, a person on parole would not be considered to be a prisoner." The comment supports our conclusion that a prisoner is one under restraint by confinement in some type of an institution. The term "prisoner," as used, is synonymous with the term "inmate."

A history of the general area of sovereign immunity discloses that in 1957, the Legislature authorized the California Law Revision Commission to conduct a study on the question of such immunity. The California Tort Claims Act statutorily entitled, "Claims and Actions against Public Entities and Public Employees"[4] was largely the product of the law revision commission's study and recommendation. (See Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar) Introduction, pp. xxx-xxxi; 2 Pacific L.J. 697, 699.) In part the commission report reads as follows:

"The inmate of a jail or prison is in a peculiarly vulnerable position insofar as injuries sustained during incarceration are concerned. The demands of correctional policy require that he be subject to strict

---

[4] Government Code section 810 et seq.

disciplinary control by prison officials; yet as an individual he retains a juridically cognizable interest in freedom from unlawful invasion of his person. As the Supreme Court of Arkansas put it, 'A man does not cease to be a human being because he is convicted and imprisoned.' [Fn. omitted.] Hence the question arises as to the extent to which tortious injuries sustained while in prison or jail should provide a basis of legal redress against the public entity operating the facility.

" . . . . . . . . . . . . . . . .

"Reconciliation of the competing interests in effective penology and in protection to the individual prisoner is not an easy task, for rules of tort liability should not lightly expose the administration of jails and prisons to review by courts and juries unfamiliar with disciplinary and rehabilitory problems encountered therein. General policy decisions with respect to methods for treating prisoners are presumably arrived at by personnel who have given careful study to alternative programs and have arrived at an informed decision as to what is most consistent with sound public policy. Such decisions, for example, entail the administration of special punishments for infractions of discipline (*e.g.,* loss of exercise privileges, reduced food allotments, solitary confinement, etc.) which, under some circumstances, may result in discomfort, mental anguish or even physical injury to the prisoner. To permit tort liability in such cases would tend to disrupt and interfere substantially with formulation and execution of correctional policy. It would seem, on the whole, that no tort liability should be admitted for damages *sustained as the consequence of conditions which are common to all inmates and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions. . . .*" (5 Cal.Law Revision Com. Rep. pp. 421-422; 425; italics added.)

The commission's discussion is obviously more germane to section 844.6, subdivision (2) dealing with injuries to a prisoner. However, it reflects the total environment envisioned by the drafters inasmuch as the definition of prisoner is utilized in section 844.6, subdivisions (1) and (2). Once the concept of the term "prisoner" is ascertained, it applies to both subdivisions equally. The entirety of the report addresses itself to the problems of those confined in institutions with other inmates and the problems of the public entity exercising jurisdiction over persons in confinement.

Three recent cases are most relevant to our discussion; they attempt to discern the true definition of the term "prisoner" as utilized in section 844.6. First, in *Datil* v. *City of Los Angeles, supra,* 263 Cal.App.2d 655, two men had been arrested and booked and were awaiting transfer to the main jail. One arrestee injured the other who sued the city. The question was whether the arrestee who committed the assault was a prisoner under section 844.6. The court at pages 658-659 stated, "In support of their first ground of appeal, namely, that neither Datil nor Rhines was a 'prisoner' at the time of the assault by Rhines, plaintiffs contend that at that time no complaint had been filed, no arraignment had, and no plea to any charge entered by either man. Alluding to the statutory definition of prisoner in section 844, plaintiffs concede that the word 'includes' (as used in the phrase ' "prisoner" includes an inmate') is a word of enlargement and not of limitation. (*Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 570 [230 P.2d 71]; *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 639 [268 P.2d 723].) Nevertheless plaintiffs insist that the definition is controlled by the word 'inmate' which means 'a resident, dweller, lodger, at least with some degree of permanency,' and that the term 'prisoner' is to be construed in its narrow and technical sense as a 'person deprived of his liberty by virtue of a judicial or other lawful process; . . .' (Plaintiffs cite 72 C.J.S. Prisoner, p. 847; 39 Cal.Jur.2d, Prisons and Prisoners, § 3, p. 638; 41 Am.Jur., Prisons and Prisoners, § 2, p. 886.) Quite understandably plaintiffs cite no authority for this novel synthesis of the statutory language; our own research has uncovered no such authority. On the contrary, almost every popular dictionary as well as law dictionary and encyclopaedic work, states in words or substance that a prisoner is a person 'under arrest,' 'in custody,' 'in jail,' 'in prison'; in short, one who is being restrained involuntarily. The test is not whether he has been informed against, indicted, arraigned, tried or convicted."

In *Larson* v. *City of Oakland, supra,* 17 Cal.App.3d 91, the court concluded that as used in section 844.6, the word "prisoner" was used in the narrow technical sense, embracing those confined in a prison, jail, penal or correctional institution.

Finally, in *Jiminez* v. *County of Santa Cruz* (1974) 42 Cal.App.3d 407 [116 Cal.Rptr. 878], the court was called upon to determine whether the term "prisoner" as used in section 844.6, subdivision (a)(2), encompassed a "ward of a juvenile court declared under [Welf. & Inst. Code] section 602 and under placement by that court." After reviewing the various

legislative comments available, the court concluded: "It appears from these comments that the Legislature intended that the word 'prisoner' included [*sic*] all inmates of any facility in which they were placed by the courts or law." (*Id.,* at p. 410.) The court, however, expanded the scope of the term "facility" to include "a foster home" in which a ward is placed by the court.

Although the opinion does not make clear the extent or place of confinement in which the ward was placed, he had originally been confined in an institution but was removed from confinement, continued in wardship, and returned to his mother. Thereafter, for reasons of incorrigibility, he was once again placed in custody or confinement in a "From Now on Homes for Youth." It is this agency that the court refers to as a foster home. In the narrow context used, we concur in that court's conclusion. However, whether a "foster home" constitutes a place of confinement or judicial restraint making those placed there "prisoners" or inmates as defined in section 844.6, will depend upon the individual circumstances of each case. We do not consider a private home or residence utilized for foster children care a correctional facility. A foster care agency in which restraints on individual freedoms are exerted would properly be categorized as an institution whose inmates are considered prisoners, as would a juvenile hall. Welfare and Institutions Code section 851 provides: "The juvenile hall shall not be in, or connected with, any jail or prison, and shall not be deemed to be nor be treated as a penal institution. It shall be conducted in all respects as nearly like a home as possible." Nevertheless, if a ward is placed there, he is a prisoner in the sense that he was in custody as the result of a legal process.

The court in *Jiminez* recognized as we do that when a ward is released from confinement and placed by the juvenile court with his parents, the status of "prisoner" no longer exists. The restraint of confinement as an inmate is eliminated. ■ From the foregoing analysis of the various statutory comments, case interpretation, and statutory language, we conclude that to come within the purview of section 844.6, a prisoner must be a person confined in a correctional facility or institution under the authority of law enforcement authorities or legal process. Our definition of a prisoner applies equally to wards of the juvenile court as well as to adults. ■ The distinction to be drawn in juvenile cases is that between wards individually placed in private homes, either of a parent or private foster home and those placed in institutions or other collective facilities of restraint established for youthful offenders.

Accordingly, inasmuch as defendant Lawrence C. was committed to the care of his parent and not restrained by confinement, he is not to be deemed a prisoner within the meaning of sections 844 and 844.6.

The judgments are reversed.

Friedman, Acting P. J., and Regan, J., concurred.