[Civ. No. 46899. First Dist., Div. Four. June 30, 1980.]

JOHN MEYER, Plaintiff and Respondent, v.
CITY OF OAKLAND, Defendant and Appellant.

**COUNSEL**

David A. Self and Michael Lawson, City Attorneys, and Douglas G. Wah, Deputy City Attorney, for Defendant and Appellant.

Barry D. Hovis and Angell, Adams & Holmes for Plaintiff and Respondent.

OPINION

**RATTIGAN, J.**—Respondent John Meyer (plaintiff) commenced this action against appellant City of Oakland (City) and others, seeking damages for injuries he received while he was confined in the Oakland City jail. A jury returned a verdict against the City and awarded plaintiff damages in the amount of $35,000. The City appeals from the judgment entered on the verdict.[1]

### THE ACTION

Plaintiff's complaint named the City and Sergeants Lacer and Nisihara, of the Oakland Police Department, as defendants in the action. Plaintiff alleged in the complaint that he was "taken into custody" by the police department on November 8, 1975; that he was "taken to the city jail" and placed in a "dormitory cell," where he was severely beaten by two named men; and that the beating and his consequent injuries were the proximate results of the defendants' negligent "failure to supervise the activities in the jail dormitory cell."

The City and the defendant officers filed answers in which they pleaded material denials and various affirmative defenses. They alleged in one affirmative defense that plaintiff had been a "prisoner" in the jail when he was injured, and that "[p]ursuant to Section 844.6 of the Government Code . . ., defendants are immune from liability for injury to a prisoner."

On two occasions during the jury trial, the City made timely motions for a judgment of nonsuit on the "prisoner immunity" ground asserted in its affirmative defense. The motions were denied. The jury returned verdicts in favor of the defendant officers and a verdict against the City fixing plaintiff's damages at $35,000. Judgment on the verdict was entered, and the trial court denied motions by the City for a new trial and for judgment notwithstanding the verdict. This appeal followed.

### THE EVIDENCE

The trial record supports the following summary of the evidence:

The pertinent events occurred in the morning hours of November 8, 1975. Plaintiff was taken into custody at 1 a.m. for having been intoxi-

---

[1] The notice of appeal also refers to various "orders" made by the trial court. The appeals purportedly taken from them must be dismissed because none is appealable.

cated in a public place in violation of Penal Code section 647, subdivision (f). He was transported to the Oakland City jail. It is undisputed that at all pertinent times thereafter he was held at the jail in "civil protective custody" pursuant to Penal Code section 647, subdivision (ff).[2]

When plaintiff arrived at the jail, he was placed in a holding cell with jail inmates Benjamin Perez and John Hayes. They assaulted him, removing his wrist watch and striking him in the face. Jail officers promptly removed Perez and Hayes from the holding cell. Plaintiff told the officers that he was frightened, and that he wanted someone to know he was in the jail. The officers assured him that Perez and Hayes would not bother him any more, and permitted him to telephone an attorney. Plaintiff was then placed in "O Dorm," a dormitory facility at the jail.

Sergeant Lacer, one of the individuals named as defendants in the action, testified as follows: He was the supervising officer at the jail on the morning of November 8, 1975. He knew at the time that plaintiff was being held in "protective custody" pursuant to Penal Code section 647, subdivision (ff). When a person is "brought in" under that statute, he was sent to the "detox program" at Highland Hospital "when there was room" there. It was a "function of the jail" to call Highland Hospital to see if there were space available for a person in this situation. The hospital should have been called in plaintiff's case, but Lacer did not know if a call had been made. (There was no evidence that it had.)

When Perez and Hayes were removed from the holding cell where they had assaulted plaintiff, Sergeant Lacer observed that plaintiff had

---

[2]Penal Code section 647 provides in pertinent part as follows:

"647. Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

". . . . . . . . . . . . .

"(f) Who is found in any public place under the influence of intoxicating liquor. . . .

"(ff) When a person has violated subdivision (f) of this section, a peace officer, if he is reasonably able to do so, shall place the person, or cause him to be placed, in civil protective custody. Such person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates. A peace officer may place a person in civil protective custody with that kind and degree of force which would be lawful were he effecting an arrest for a misdemeanor without a warrant. No person who has been placed in civil protective custody shall thereafter be subject to any criminal prosecution or juvenile court proceeding based on the facts giving rise to such placement. . . ."

been injured. He (Lacer) ordered Perez and Hayes placed in "safety cells." He also noted in the jail disciplinary log that Perez should remain in a safety cell "due to [his] combative nature." Shortly after that, however, Lacer permitted Perez and Hayes to be placed in O Dorm with plaintiff. Perez and Hayes continually beat, kicked, and sexually harassed plaintiff in O Dorm during the next several hours. Plaintiff repeatedly called for help, but no one came to his assistance.

Plaintiff was released from the jail at 10:45 a.m. He telephoned his sister, who drove him to a hospital. A physician who examined him there testified that he had a broken nose, fractures of the lumbar spine, a kidney contusion caused by at least one "very, very large or hard blow," bruises on his face, blood clots in his mouth, and cigarette burns on his face and on one hand. The physician described the injuries as "serious," generally confirmed that they had been inflicted by beating and kicking, and testified that plaintiff was in "constant" and "very, very severe" pain. Plaintiff remained at the hospital for four weeks.

### REVIEW

■ Consistent with the affirmative defense asserted below, the City's sole contention on appeal is that plaintiff was a "prisoner" in the jail when he was injured, and that the City is accordingly immune from liability for his injuries, as a matter of law, pursuant to the "prisoner immunity" granted it by section 844.6, subdivision (a)(2), of the Government Tort Claims Act (Gov. Code, div. 3.6 [commencing with § 810], hereinafter the Act]).[3]

The Act provides, generally, that a public entity is liable for the negligence or other wrongful conduct of its employees acting within the scope of their employment. (§ 815.2, subd. (a).) Chapter 3 of the Act (commencing with § 844) establishes various exceptions to the general rule in the subject matter area defined by the chapter's title (Police and Correctional Activities). One of the exceptions appears in section 844.6, which provides that an entity is not liable for "[a]n injury to any prisoner." (§ 844.6, subd. (a)(2), quoted in fn. 3, *ante.*)

---

[3]Statutory references at and after this point are to the Act except where expressly indicated otherwise. Section 844.6 provides in pertinent part: "844.6. (a) Notwithstanding any other provision of this part,...a public entity is not liable for: [¶] (1) An injury proximately caused by any prisoner. [¶] (2) An injury to any prisoner...."

For purposes of chapter 3, the term "'prisoner' includes an inmate of a prison, jail or penal or correctional facility." (§ 844.) The question is whether the term "includes" a person who is an "inmate" of such facility, in the physical sense, but who is being held there in "civil protective custody" pursuant to Penal Code section 647, subdivision (ff).

A review of the pertinent decisions confirms the observation in one of them that appellate courts have "struggled" with the meaning of the term "prisoner" since the enactment of section 844. (*Patricia J. v. Rio Linda Union Sch. Dist.* (1976) 61 Cal.App.3d 278, 283 [132 Cal.Rptr. 211].) In *Datil v. City of Los Angeles* (1968) 263 Cal.App.2d 655 [69 Cal.Rptr. 788], the Court of Appeal relied on dictionary definitions of the term as the basis for holding that it means any "person 'under arrest,' 'in custody,' 'in jail,' 'in prison'; in short, *one who is being restrained involuntarily.*" (*Id.,* at p. 659 [italics added].) Another court distinguished *Datil* on its facts and held that the term "prisoner" did not include a person who had merely been "detained by the police but not arrested, or arrested and not booked." (*Larson v. City of Oakland* (1971) 17 Cal.App.3d 91, 97 [94 Cal.Rptr. 466].) Drawing essentially the same distinction, a third court held that the term included a "pre-conviction detainee" who had been booked and arraigned for a criminal offense and was in jail "awaiting trial." (*Sahley v. County of San Diego* (1977) 69 Cal.App.3d 347, 349 [138 Cal.Rptr. 34].)

The term has been held to include a minor who had been made a ward of the juvenile court and was "in the director's custody" at a foster home where he had been placed by order of the court. (*Jiminez v. County of Santa Cruz* (1974) 42 Cal.App.3d 407, 409-412 [116 Cal. Rptr. 878].) In the *Patricia J.* case, however, it was held that the term did not include a ward of the juvenile court who had been "committed to the custody of his mother" and was living at her home. (*Patricia J. v. Rio Linda Union Sch. Dist., supra,* 61 Cal.App.3d 278 at pp. 281, 282-287.) The *Patricia J.* court distinguished *Jiminez* on the theory that a minor placed by the juvenile court with his parent is not under the "restraint of confinement as an inmate" for purposes of section 844. (*Id.,* at p. 287.)

With some variations, these decisions focus on the fact of a person's "confinement," or the formalities attending it (or the lack of either), as the elements which will essentially control the determination whether he

is a "prisoner" within the meaning of section 844. The same reasoning has been employed in other decisions dealing with the term "prisoner" in distinguishable but related contexts. (See, e.g., *People* v. *Diaz* (1978) 22 Cal.3d 712, 714-717 [150 Cal.Rptr. 471, 586 P.2d 952]; *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 716-717 [117 Cal.Rptr. 241, 527 P.2d 865]; *People* v. *Rodriguez* (1963) 222 Cal.App.2d 221, 225-226 [35 Cal.Rptr. 435].) In cases involving the meaning of the term for purposes of conferring governmental immunity pursuant to section 844.6, that reasoning has produced such definitions of "prisoner" as "a person confined in a correctional facility or institution under the authority of law enforcement authorities or legal process." (*Patricia J.* v. *Rio Linda Union Sch. Dist., supra,* 61 Cal.App.3d 278 at p. 287.)

Plaintiff was "confined" in the Oakland City jail within the meaning of the definition last quoted. It nevertheless does not end our inquiry, because of the distinguishable feature that his "confinement" was qualified by the statute which both enabled and defined it. (Pen. Code, § 647, subd. (ff); see fn. 2 and the accompanying text, *ante.*) That statute and section 844 must accordingly be construed together, consistent with the familiar precepts that each is to be interpreted in such manner as will effectuate the discernible intent of the Legislature in enacting it (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274]) and that they are to be harmonized to the extent that they deal with the same subject matter. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965 [131 Cal. Rptr. 172].)

Authoritative indications of the legislative intent underlying so-called "prisoner immunity" (of which § 844 is the definitive component) may be found in the report of the California Law Revision Commission on which the Legislature relied when it adopted the Government Tort Claims Act in 1963. (A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 1 et seq.; see *Patricia J.* v. *Rio Linda Union Sch. Dist., supra,* 61 Cal.App.3d 278 at p. 284.) The pertinent passages of the report demonstrate that the commission recommended adoption of the doctrine of "prisoner immunity" in the interest of "correctional policy," of the proper supervision of "convicts" and "prison inmates," and of "effective penology." (5 Cal. Law Revision Com. Rep., *supra,* at pp. 421-425.)

The commission's terminal recommendation is stated as follows: "It would seem, on the whole, that no tort liability should be admitted for

damages sustained as the consequence of conditions which are *common to all inmates* and which simply represent a reasonable application of *general policy determinations* by responsible prison or jail authorities *with respect to the administration of such institutions....*" (5 Cal. Law Revision Com. Rep., *supra*, at p. 425 [italics added].)

The quoted language emphasizes the Law Revision Commission's—and the Legislature's—view that "prisoner immunity" is a necessary adjunct of *penology* and *corrections* in the overall "administration of...institutions" conventionally discharging those functions. Neither function is involved in the governmental activity prescribed in Penal Code section 647, subdivision (ff), which does not define a criminal offense. It identifies the effect of its application as "*civil* protective custody." (Italics added.) It implements the "civil" limitation by providing that "[n]o person who has been placed in *civil* protective custody shall thereafter be subject to any *criminal* prosecution...based on the facts giving rise to such placement...." (See fn. 2, *ante* [italics again added here].)

One reviewing court has held that "[t]he state, in enacting Penal Code section 647, subdivision (ff), is attempting to deal with the problem of inebriates by permitting any county...an opportunity to deal with such people as '*sick*' *rather than as criminals.*" (*People* v. *Superior Court* (*Colon*) (1972) 29 Cal.App.3d 397, 400 [105 Cal.Rptr. 268] [italics added].) Another has stated: "When compliance is had with subdivision (ff), the result is that the subdivision (f) violator is *completely free of the criminal process.* This result obviously comports with the purpose of the statute to provide *medical instead of penal treatment* for one drunk in public." (*People* v. *Ambellas* (1978) 85 Cal.App.3d Supp. 24, 32 [149 Cal.Rptr. 680] [italics added; fn. omitted]; see also Pen. Code, § 849, subd. (b)(2).)

Section 647, subdivision (ff), provides that a person who is placed in civil protective custody "shall" be taken "to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates." (See fn. 2, *ante.*) The word "shall" is construed as mandatory in this context. (*People* v. *Ambellas, supra*, 85 Cal.App.3d Supp. 24 at p. 32.) The "facility" to which the person in civil protective custody "shall" be taken is not a pe-

nal or correctional institution; it is a place "designated" by local government, and approved by the state Department of Alcohol and Drug Abuse, for the "72-hour treatment and evaluation" which is mentioned both in Penal Code section 647, subdivision (ff), and in the statute it cites. (Welf. & Inst. Code, § 5170.)[4] The Legislature's awareness of the relationship between these two statutes, and of their mutually "civil" nature, is demonstrated by the fact that they were coordinated in a single 1971 measure which enacted one and amended the other. (Stats. 1971, ch. 1581, § 1, pp. 3187-3188; *id.*, § 2, p. 3189.)

We perceive from these sources that the Legislature intended the term "prisoner," as used in section 844, to include a person who is *confined* in a facility or institution, under the authority of law but pursuant to a *penological* or *correctional* objective. This definition does not reach a person in confinement who has not been charged with crime and is being held in "civil protective custody" pursuant to Penal Code section 647, subdivision (ff). Plaintiff was accordingly not a "prisoner" while he was being held in the Oakland City jail, and he did not become a "prisoner" by reason of the City's failure to comply with the statute by delivering him to another facility for medical evaluation and treatment as an inebriate.

Because plaintiff was not a "prisoner" when he was injured, the City is not immune from liability pursuant to section 844.6, subdivision (a)(2). This result comports with the principles that "when there is negligence, the rule is liability, immunity the exception" (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457]), and that the Government Tort Claims Act is to be construed accordingly. (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]; *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 819 [131 Cal.Rptr. 854].)

---

[4]At pertinent times, this statute provided: "5170. When any person is a danger to others, or to himself, or gravely disabled as a result of inebriation, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, or other person designated by the county, may, upon reasonable cause, take, or cause to be taken, the person into *civil protective custody* and place him in a facility designated by the county and approved by the State Department of Health as a facility for *72-hour treatment and evaluation* of inebriates." (Italics added.) The approving state agency is now the Department of Alcohol and Drug Abuse. (Welf. & Inst. Code, § 5170, as amended by Stats. 1978, ch. 429, § 204, p. 1453.)

The judgment is affirmed. The appeals purportedly taken from any and all "orders" mentioned in the notice of appeal are dismissed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied July 17, 1980.