[No. S106553. Apr. 28, 2003.]

CRAIG TETER, Plaintiff and Respondent, v.
CITY OF NEWPORT BEACH, Defendant and Appellant.

## COUNSEL

Robert W. Burnham, City Attorney, Daniel K. Ohl, Deputy City Attorney; Glen E. Tucker; Beam, Brobeck, West & Sullivan, Beam, Brobeck & West, David J. Brobeck, Jr., and Kermit D. Marsh for Defendant and Appellant.

Jones & Mayer, Martin J. Mayer and Michael R. Capizzi for California State Sheriffs' Association, California Police Chiefs Association, California Peace Officers' Association, California State Association of Counties and Ten California Cities as Amici Curiae on behalf of Defendant and Appellant.

Michael R. Cully and Associates, Michael R. Cully; and Jean Ballantine for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—Plaintiff was arrested and jailed for public intoxication (Pen. Code,[1] § 647, subd. (f); hereafter section 647(f)),[2] but was later released without charges (§ 849, subd. (b)(2); hereafter section 849(b)(2)).[3] While he was in jail, defendant was badly beaten by another prisoner and he sued the City of Newport Beach (the City) for negligence. The City claims immunity under Government Code section 844.6, subdivision (a)(2) (hereafter Government Code section 844.6(a)(2)). Government Code section 844.6(a)(2), subject to stated exceptions, provides that a public entity is not liable for "[a]n injury to any prisoner." Therefore, the question presented by this case is whether, given the fact that he was ultimately discharged pursuant to Penal

---

[1]Hereafter all statutory references are to the Penal Code unless otherwise indicated.

[2]Section 647(f) provides for the misdemeanor arrest of a person who is found in a public place under the influence of an intoxicating liquor and who is by reason of such intoxication "unable to exercise care for his or her own safety or the safety of others . . . ."

[3]Section 849(b)(2) provides that a peace officer may release a person arrested solely for intoxication, if "no further proceedings are desirable."

Code section 849(b)(2), plaintiff was a prisoner while he was in jail. We conclude that plaintiff was a prisoner, and, accordingly, that the City can claim Government Code section 844.6(a)(2) immunity.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One evening plaintiff was arrested and booked into the City jail for violation of section 647(f). There was no civil detoxification facility to which plaintiff could reasonably have been taken. (See § 647, subd. (g); hereafter section 647(g).) However, the City did have a policy, pursuant to section 849(b)(2), of releasing a person arrested for public intoxication, provided the individual: (1) had not been arrested for public intoxication three times in the prior year, (2) was not combative during the incident or the arrest, and (3) was not on probation for alcohol or drug offenses.[4] Prior to 6:30 the next morning, the City determined that plaintiff was presumptively eligible for such a release. Pending a final check of plaintiff's condition at 8:00 a.m., and the absence of detrimental new information bearing on one of the three eligibility factors, the City planned to release him without filing charges.

At approximately 7:00 a.m., another prisoner, Waldron, was placed in the cell where plaintiff was sleeping. Waldron had been arrested for falsely identifying himself to the arresting officer after he was found sleeping on the beach in violation of a curfew. The false identification Waldron gave the arresting officer led the officer to believe, apparently mistakenly, that Waldron might be a registered sex offender. Apart from falsely identifying himself, Waldron was cooperative with the arresting officer. That is, Waldron was "quite docile." He was not "combative, argumentative, or resistant." Nor did Waldron exhibit any violent behavior during the two to two and a half hours he spent in the presence of one of the jailers. Because Waldron "was cooperative with us, he was showing no tendencies towards violence of any kind," the jailer "decided to get him out of the [holding] tank and place him in the general population." Unfortunately, before plaintiff's projected release at 8:00 a.m., Waldron severely beat him, resulting in a concussion and a broken eye socket. Plaintiff spent approximately 12 days in the hospital and suffered permanent scarring and continued vision problems.

Plaintiff sued the City for damages, alleging, inter alia, negligence. The City contended that two provisions of the Government Code immunized it

---

[4] Under section 849(b)(2), a person arrested only for intoxication may be released from custody without appearing before a magistrate if "no further proceedings are desirable." Section 851.6, subdivision (b) states that anyone released without having charges filed "shall be issued a certificate by the law enforcement agency which arrested him describing the action as a detention."

from liability for plaintiff's injuries: Government Code sections 844.6(a)(2) (injuries to a prisoner) and 820.2 (discretionary act immunity). The trial court concluded that neither statute conferred immunity, and the matter proceeded to trial. The jury returned a verdict in plaintiff's favor, and the trial court entered judgment against the City for $175,006.89.

The Court of Appeal affirmed the judgment, concluding that plaintiff was a detainee in civil protective custody, and not a prisoner within the meaning of Government Code section 844.6(a)(2), and that the jail officer's decision to place Waldron in plaintiff's cell was a ministerial act not entitled to immunity under Government Code section 820.2.

The City petitioned for review, renewing its claim that it is immune under Government Code section 844.6(a)(2) for any injury *to* a prisoner. (The petition did not challenge the Court of Appeal's disposition of the claim of discretionary act immunity.) Alternatively, the City argues that it is immune under Government Code section 844.6, subdivision (a)(1) for any injury proximately caused *by* a prisoner. Plaintiff argues that the City failed to raise this argument in the Court of Appeal. The City disputes this. However, a fair reading of its briefs in the Court of Appeal is that the City, for whatever reason, relied solely on the immunity provided by Government Code section 844.6(a)(2) (injury *to* a prisoner). Therefore, as a matter of policy, we decline to consider the City's argument based on Government Code section 844.6, subdivision (a)(1) (injury proximately caused *by* a prisoner). (Cal. Rules of Court, rule 29(b)(1).)

## II. Discussion

To reiterate: Government Code section 844.6(a)(2), subject to stated exceptions, provides that a public entity is not liable for "[a]n injury to any prisoner."[5]

Section 844.6(a)(2) appears in chapter 3 of title 1, division 3.6, part 2 of the Government Code. Government Code section 844 also appears in

---

[5]Government Code section 844.6 states: "(a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:

"(1) An injury proximately caused by any prisoner.

"(2) An injury to any prisoner.

"(b) Nothing in this section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code.

"(c) Except for an injury to a prisoner, nothing in this section prevents recovery from the public entity for an injury resulting from the dangerous condition of public property under Chapter 2 (commencing with Section 830) of this part.

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not

chapter 3. Section 844 provides that "[a]s used in this chapter, 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility. *For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes.*" (Italics added.)

██ Plaintiff was arrested and booked for violation of Penal Code section 647(f). Therefore, the City contends, he was a prisoner under the plain terms of Government Code section 844. Plaintiff disagrees. The term *prisoner* as used in Government Code section 844.6(a)(2), he contends, should be narrowly construed.

Government Code section 844.6(a)(2) is part of the California Tort Claims Act (Gov. Code, § 810 et seq.). Under the Tort Claims Act, plaintiff contends, liability is the rule and immunity the exception. Plaintiff is quite wrong about that. The Tort Claims Act provides that "[e]xcept as otherwise provided by statute," "[a] public entity is not liable for an injury." (Gov. Code, § 815.) ██ Recently, in *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127-1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171], we reiterated that " ' "[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances . . . ." ' (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624].)"

██ The Court of Appeal agreed with plaintiff that he was not a prisoner, but rather in civil protective custody, at the time of his injury. The considerations that led the Court of Appeal to this conclusion are simply not apposite.

First, the Court of Appeal raised section 647(g). Section 647(g) provides in pertinent part: "When a person has violated subdivision (f) of this section, a peace officer, *if he or she is reasonably able to do so*, shall place the person . . . in civil protective custody. The person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code,

required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed."

for the 72-hour treatment and evaluation of inebriates [(civil detoxification facility)]. . . . No person who has been placed in civil protective custody shall thereafter be subject to any criminal prosecution . . . based on the facts giving rise to this placement." (Italics added.)

Section 647(g) is inapposite because plaintiff was *not* placed in civil protective custody pursuant to it. The predicate for the application of section 647(g) is that the arresting officer be "reasonably able" to place the arrestee in a civil detoxification facility. However, as the Court of Appeal acknowledged, "[a]ccording to the record on appeal, no such facility is available in or near Newport Beach."

The fact that no civil detoxification facility was available to the arresting officer here, and that plaintiff was accordingly not placed in civil protective custody pursuant to section 647(g), distinguishes this case from the case upon which the Court of Appeal principally relied—*Meyer v. City of Oakland* (1980) 107 Cal.App.3d 770 [166 Cal.Rptr. 79] (*Meyer*).

Like plaintiff here, the plaintiff in *Meyer, supra,* 107 Cal.App.3d 770, was arrested for public intoxication and was injured by other inmates while confined in jail. However, unlike the City of Newport Beach, the City of Oakland had a civil detoxification facility. The supervising officer of the Oakland City jail knew that Mr. Meyer was being held in civil protective custody pursuant to section 647, former subdivision (ff) (now § 647(g)). Under the practice of the Oakland City jail, a person brought in under that statute was to be sent to the civil detoxification facility at Highland Hospital when room there was available. The hospital should have been called in Mr. Meyer's case, but apparently was not. Therefore, it was "undisputed that . . . he was held at the jail in 'civil protective custody' pursuant to Penal Code section 647, [former] subdivision (ff)." (*Meyer*, at p. 773, fn. omitted.) "Because plaintiff was not a 'prisoner' when he was injured," the Court of Appeal concluded in *Meyer*, "the City is not immune from liability pursuant to section 844.6, subdivision (a)(2)." (*Meyer*, at p. 778.)

Again, as the Court of Appeal here recognized, this case is distinguishable from *Meyer*. The plaintiff here was not being held in civil protective custody pursuant to section 647(g). He had been arrested and booked for violation of section 647(f), and we have emphasized that such a person is being held pursuant to a penological objective. (*Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1127 [232 Cal.Rptr. 814, 729 P.2d 80] (*Sundance*).)

■ Moreover, we reject the underlying premise of the *Meyer* opinion—that a section 647(f) arrestee being held in jail pending transfer to a civil

detoxification facility is not a prisoner for the purposes of Government Code section 844.6(a)(2). The California Law Revision Commission, in the report that resulted in the California Tort Claims Act, observed that "no tort liability should be admitted for damages sustained as the consequence of *conditions which are common to all inmates* and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions." (Recommendation: Sovereign Immunity Study (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 425, italics added.) Suppose that in two cities, A and B, the jails are identical in all respects, including the factors that bear on the likelihood of prisoner/prisoner assaults, like the number of single cells and the staff/prisoner ratios. However, in City A, unlike City B, a civil detoxification facility is available. In City A's jail, a section 647(f) arrestee is injured by another prisoner while awaiting transfer to the civil detoxification facility. In City B's jail, a section 647(f) arrestee is also injured by another prisoner. Why should City A be liable under Government Code section 844.6(a)(2) when City B is not? Why should the question of the city's liability turn on the availability within that city of a civil detoxification facility? We can think of no good reason. Accordingly, we disapprove of, and not merely distinguish, *Meyer v. City of Oakland, supra,* 107 Cal.App.3d 770.

In concluding that those arrested for violation for section 647(f) but ultimately released without charges pursuant to section 849(b)(2) should be considered to have been held in civil protective custody, the Court of Appeal reasoned that the contrary conclusion "could discourage cities from providing detoxification facilities, clearly contradicting the Legislature's intent in enacting section 647, subdivision (g)." Indeed, one of the virtues of the Court of Appeal's opinion, in plaintiff's view, is that it would have "encourage[d] local authorities to designate civil detoxification facilities . . . ." Providing civil detoxification facilities may well be sound public policy for a number of reasons, not the least of which is that public inebriates, by definition, are unable to exercise care for their own safety, and are therefore especially vulnerable to predatory fellow inmates. However, it is not for the courts, but rather for those exercising legislative authority at the state or county level, to make that policy judgment. As we said in *Sundance, supra,* 42 Cal.3d 1101, 1139: "This court should not interfere with the County's legislative judgment on the ground that the County's funds could be spent more efficiently [on civil detoxification facilities than on criminal enforcement of section 647(f)]. [¶] The Legislature determined that public intoxication is a crime and it offered counties the option of diverting section 647(f) arrestees to civil detoxification facilities in lieu of prosecution. (§ 647[, former subd.] (ff)[; now § 647(g)].) Although section 647(f) is a

valid penal statute, plaintiffs urge this court to override the legislative judgment and effectively decriminalize public intoxication on the ground that civil detoxification is cheaper and more effective than prosecution of public inebriates. This court declines to intrude so far into the legislative prerogative."

Alternatively, plaintiff contends that a person arrested for violation of Penal Code section 647(f), but released without charges pursuant to Penal Code section 849(b)(2), should be treated as if he or she were never a prisoner within the meaning of Government Code sections 844 and 844.6(a)(2). His argument is as follows: Under Government Code section 844, an arrested person "brought into a law enforcement facility for the purpose of being *booked* . . . becomes a prisoner . . . ." (Italics added.) Under Penal Code section 7, subdivision 21, "[t]o 'book' signifies the recordation of an arrest in official police records . . . ." However, under Penal Code section 849, subdivision (c), the arrest of a person for public intoxication who is released pursuant to section 849(b)(2) is deemed a detention only, not an arrest.

This is but a variation on what the Courts of Appeal have referred to as the " 'disappearing lawful arrest' " trick. (See *Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1178 [19 Cal.Rptr.2d 399]; *Behan v. Alexis* (1981) 116 Cal.App.3d 403, 405 [172 Cal.Rptr. 132].) To paraphrase the *Armondo* court, we hold that an arrest for Penal Code section 647(f), valid when made, remains a valid arrest for the purposes of Government Code section 844.6(a)(2), even though the person arrested is subsequently released pursuant to Penal Code section 849(b) and issued a certificate pursuant to Penal Code section 851.6, describing the action as a detention. (See *Armondo*, at p. 1179.)

Next, in an argument that is very difficult to follow, plaintiff claims the 1996 amendment to Government Code section 844 somehow supports his position that he was never a prisoner within the meaning of Government Code sections 844 and 844.6(a)(2). However, the legislative history of the amendment demonstrates that, if anything, the opposite is true.

To reiterate, Government Code section 844 provides that "[a]s used in this chapter, 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility. *For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes.*" (Italics added.)

The second sentence of Government Code section 844, which we have italicized, was added to the statute in 1996. (Stats. 1996, ch. 395, § 1.) The legislative history of the amendment reveals that it was sponsored by the California State Sheriffs' Association (CSSA) because the CSSA "believe[d] that conflicting appellate court decisions may place public entities at risk of liability for persons injured while being taken into custody and booked." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1493 (1995-1996 Reg. Sess.) as amended Apr. 8, 1996, p. 2 (hereafter Senate Bill Analysis).)

The Court of Appeal decision of particular concern to the CSSA was *Zeilman v. County of Kern* (1985) 168 Cal.App.3d 1174 [214 Cal.Rptr. 746]. (Sen. Bill Analysis, *supra*, at pp. 2-3.) At the time the arrestee in *Zeilman* fell and injured herself, the paperwork portion of the booking procedure had been completed, but she had not yet been fingerprinted or photographed. In her suit for personal injuries resulting from the fall, the trial court granted the county's motion for summary judgment based on Government Code section 844.6(a)(2). The Court of Appeal reversed. In the Court of Appeal's view, "the line of demarcation between status as an arrestee and as a confined person is the completion of the booking process" (*Zeilman*, at p. 1181), and, the Court of Appeal concluded, "a triable issue of fact exist[ed] as to whether the booking process was completed" (*id.* at p. 1183).

The bill sponsored by the CSSA clarified that a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked becomes a prisoner, as a matter of law, upon his initial entry into the facility. (Sen. Bill Analysis, *supra*, at p. 2.) Plaintiff can hardly take comfort from this clarification.

Plaintiff's reliance on *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865] is also misplaced. In *Sullivan*, a prisoner who had been confined in jail for several days after his term expired brought an action for false imprisonment. Because the plaintiff was a prisoner, the county argued, it was immune under Government Code section 844.6. We rejected the claim of immunity. "Continued confinement cannot legally make him a 'prisoner' *when the jail term has expired*; in the eyes of the law plaintiff is no longer a 'prisoner.' In short, we conclude that section 844.6's reference to 'an injury to any prisoner' does not apply to a case of *false* imprisonment; the section, accordingly, in the instant case, does not immunize the county." (*Sullivan*, at p. 717, first italics added.) *Sullivan* is inapposite here because plaintiff was not falsely imprisoned. At the time of his injury, plaintiff was still a prisoner, still being held in "pretrial detention . . . attendant upon enforcement of a criminal statute." (*Sundance, supra*, 42 Cal.3d at p. 1127.)

Finally, plaintiff makes a number of constitutional claims. He argues that "[s]ection 647(f) arrestees who are temporarily detained to sober up in local jails, with no intention that they be charged or prosecuted, cannot be considered 'prisoners' because they are afforded none of the due process requisites of criminal procedure." Plaintiff's argument is based on a false premise—that the City had no intention of charging him when it arrested him. To the contrary, when plaintiff was arrested, the question whether he would be charged was an open one, and it remained open at the time of his injury. As previously stated, the question whether charges would be filed depended upon whether plaintiff was found to satisfy the City's three criteria for release pursuant to section 849(b)(2)—that he (1) had not been arrested for public intoxication three times in the prior year, (2) was not combative during the incident or the arrest, and (3) was not on probation for alcohol or drug offenses. The decision was still in abeyance, pending a final determination that plaintiff met these criteria, when plaintiff was attacked by Waldron. No further process was due plaintiff.

Plaintiff contends that section 647(g), insofar as it makes placement of a section 647(f) arrestee in a civil detoxification facility contingent upon whether such a facility is reasonably available in the jurisdiction in which the arrest occurs, denies equal protection to those arrested in jurisdictions where such facilities are not reasonably available. This argument, first raised not long after section 647, former subdivision (ff) (now section 647(g)) was enacted, has been consistently, and in our view correctly, rejected. (*Johnson v. Municipal Court* (1977) 70 Cal.App.3d 761 [139 Cal.Rptr. 152]; *People v. McNaught* (1973) 31 Cal.App.3d 599 [107 Cal.Rptr. 566]; *People v. Superior Court (Colon)* (1972) 29 Cal.App.3d 397, 400-401 [105 Cal.Rptr. 695].)

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.

George, C. J., Baxter, J., and Chin, J., concurred.

**KENNARD, J.**—I concur generally in the majority opinion. There is, however, one aspect with which I disagree: Unlike the majority, I would not reach out to disapprove the Court of Appeal's decision in *Meyer v. City of Oakland* (1980) 107 Cal.App.3d 770 [166 Cal.Rptr. 79]. (See maj. opn., *ante*, at pp. 452-453.) As the majority acknowledges, this case is readily distinguishable from *Meyer*. (*Id.*, at p. 452.) That distinction renders it

unnecessary to resolve the difficult question of whether *Meyer* was correctly decided, an issue I would leave for another day when it is squarely presented.

Werdegar, J., and Moreno, J., concurred.