[No. D057709. Fourth Dist., Div. One. Apr. 20, 2011.]

DIANNE VARSHOCK et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FORESTRY AND FIRE PROTECTION, Defendant and
Respondent.

COUNSEL

Girardi Keese, Thomas V. Girardi, Graham B. LippSmith, Neyleen S. Beljajev; Niddrie, Fish & Buchanan, Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, James M. Schiavenza, Assistant Attorney General, Kristin G. Hogue and Michael P. Cayaban, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**IRION, J.**—The question in this case is whether sovereign immunity under Government Code section 850.4 (section 850.4) "for any injury caused in fighting fires" or an exception under Vehicle Code section 17001 imposing liability for death or injury "proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle" applies when death and injury result from the use of a fire engine in an attempt to rescue persons and save a home from being destroyed by a wildfire. We conclude that section 850.4 immunity prevails over the Vehicle Code section 17001 exception where, as here, death or injury results from a firefighter's allegedly negligent operation of a motor vehicle at the scene of a fire while attempting to rescue persons from the fire and to extinguish the fire. We therefore affirm the summary judgment in favor of the Department of Forestry and Fire Protection (CAL-FIRE).

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Fire at the Varshocks' Property*

Several wildfires burned through San Diego County in October and November 2007. One such fire was the Harris Ranch fire, which swept over more than 90,000 acres and destroyed more than 450 structures.

Thomas Varshock (now deceased) lived with his wife Dianne and their son Richard in a mobilehome on a piece of property (the Property) atop a remote ridge within the area consumed by the Harris Ranch fire.[1] When the fire

---

[1] Because the plaintiffs and their decedent share a common last name, we use their first names in this opinion for clarity and intend no disrespect.

approached the Property, the Varshocks evacuated. Dianne drove away first, and Thomas and Richard followed approximately five minutes later in separate vehicles.

As they were evacuating, Thomas and Richard encountered a group of firefighters. They demanded that the firefighters "do something" to save the Property.

The firefighters then proceeded in their engine towards the Property, and Thomas and Richard followed on their all-terrain vehicle (ATV). When the engine encountered thick smoke, the fire captain decided to back out to a location where he and his crew could await reinforcements. While backing out, the fire engine struck the ATV, which apparently had already broken down; Richard and Thomas got off the ATV, manually moved it to the side of the road and banged on the windows of the fire engine. Because the ATV had broken down and conditions were too dangerous to leave them outside, the fire captain told Richard and Thomas to get inside the fire engine. At that point, the fire captain saw flames behind the fire engine and believed there was a clearing at the Property, so he again proceeded toward the Property.

When they arrived at the Property, the firefighters found a shed that was ablaze and saw several small spot fires near the mobilehome, which did not then appear to be on fire. The fire captain parked alongside the mobilehome, and the firefighters exited the fire engine and began spraying water on the burning shed and embers beneath the mobilehome. As the fire captain walked around the mobilehome, he heard glass breaking and saw the interior was on fire. He instructed his crew to get back into the fire engine so that they could get away from the burning mobilehome.

As the captain tried to back the fire engine away from the fire, the wind increased and directed flames across the engine. The engine "died," and the vehicle was subjected to intense heat and surrounded by thick smoke. When the windows of the fire engine shattered and flames entered the cab, the captain instructed everyone to get out.

Thomas was unable to exit the engine and perished at the scene. Richard and the firefighters survived, but each sustained serious burn injuries.

B. *The Trial Court Proceedings*

After their administrative claim for damages was rejected, Dianne, Richard, and Thomas's brother and business associate, George Varshock (collectively the

Varshocks), sued CAL-FIRE. In their first amended complaint, the Varshocks sought damages under five separately labeled causes of action: (1) negligence; (2) negligent entrustment; (3) negligent infliction of emotional distress; (4) negligent interference with prospective economic advantage; and (5) wrongful death.

CAL-FIRE moved for summary judgment on the ground it was entitled to immunity under section 850.4. (See Code Civ. Proc., § 437c, subds. (a), (o)(2).) According to CAL-FIRE, it was entitled to judgment as a matter of law because the undisputed facts showed that its employees were acting within the scope of their employment as firefighters in response to a fire when Thomas was killed and Richard was injured.

In opposition to the motion, the Varshocks did not dispute that the firefighters were responding to a fire and were acting within the scope of their employment when Thomas died and Richard was injured. They argued, however, that the Vehicle Code section 17001 exception for injuries caused by the negligent operation of a motor vehicle applied and precluded entry of summary judgment.[2] As part of their opposition, the Varshocks submitted the declaration of a retired fire chief, who described several ways in which he believed the fire captain had improperly operated the fire engine during the unsuccessful effort to save the Property from destruction by fire.

The trial court granted the motion on the basis of *Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 153 [281 Cal.Rptr. 191] (*Colapinto*), where our colleagues in Division Two held that "where the motor vehicle was used as a method to fight a fire and not in a negligent manner on the streets and highways," the Vehicle Code section 17001 exception to section 850.4 immunity does not apply. The court subsequently entered judgment in favor of CAL-FIRE on all of the Varshocks' causes of action.

II

DISCUSSION

A. *Interpretation of Section 850.4 Immunity and the Vehicle Code Section 17001 Exception*

We first address the main substantive issue on this appeal—the interpretation and interplay of the language of the section 850.4 immunity and the

---

[2] The parties do not dispute that a fire engine is a "motor vehicle" within the meaning of Vehicle Code section 17001. (See Veh. Code, §§ 415, subd. (a), 670 [defining motor vehicle as self-propelled device by which person or property may be moved on highway].)

language of the express Vehicle Code section 17001 exception to that immunity—because we must resolve that issue before we can determine whether the trial court properly granted CAL-FIRE's motion for summary judgment. The interpretation of this statutory language presents a pure question of law on which we exercise our independent judgment. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 571 [71 Cal.Rptr.3d 299].)

■ Our primary task in interpreting a statute is to ascertain the Legislature's intent so that we may adopt an interpretation that best gives effect to the purpose of the statute. (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42] (*Klein*); *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) We examine the entire substance of a statute and the scheme of law of which it is a part to determine its scope and purpose, construe its words in context and harmonize its various parts. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71] (*State Farm*); see also *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166] [when provisions in two codes are blended together to form a single statute, they must be construed to give effect to each].) As we have previously stated, statutes " 'must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.' " (*City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 858 [280 Cal.Rptr. 368] (*City of Poway*); see also *Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1596 [107 Cal.Rptr.3d 505] [statutes must be given fair and reasonable interpretation, with due regard to language used and purpose to be accomplished].)

### 1. *Statutory Language*

We begin by examining the statutory language because that is the most reliable indicator of legislative intent. (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860]; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1394 [117 Cal.Rptr.3d 377, 241 P.3d 870].) We will analyze the immunity-conferring language of section 850.4 first and then turn to the language of the express exception to that immunity under Vehicle Code section 17001.

### a. *Immunity Language*

■ Section 850.4 states: "*Neither a public entity, nor a public employee acting in the scope of his employment, is liable* for any injury resulting from

the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, *for any injury caused in fighting fires.*" (Italics added.) As used here, " '[i]njury' " includes "death, injury to a person, [and] damage to or loss of property." (Gov. Code, §§ 810, 810.8.) The italicized language indicates several things about legislative intent.

■ First, by expressly relieving public entities and employees of liability for "any injury caused in fighting fires," section 850.4 establishes sovereign immunity from claims based on such injuries. (See Black's Law Dict. (9th ed. 2009) p. 817, col. 2 [defining "immunity" as "exemption from a duty, liability, or service of process; esp., such an exemption granted to a public official or governmental unit"].)

Second, by using the word "any," which "means without limit and no matter what kind" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]), to modify the word "injury," the Legislature intended for the immunity granted by section 850.4 to be interpreted broadly (*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1191 [114 Cal.Rptr.2d 459, 36 P.3d 2]; *Brandon S. v. State of California ex rel. Foster Family Home etc. Ins. Fund* (2009) 174 Cal.App.4th 815, 827 [94 Cal.Rptr.3d 660]; *Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 873 [69 Cal.Rptr.2d 494]). This is consistent with the general rule that sovereign immunity provisions are to be construed broadly. (See, e.g., *Teter v. City of Newport Beach* (2003) 30 Cal.4th 446, 451 [133 Cal.Rptr.2d 139, 66 P.3d 1225]; *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 228 [104 Cal.Rptr.3d 230]; *Guzman v. County of Los Angeles* (1991) 234 Cal.App.3d 1343, 1349 [286 Cal.Rptr. 317].)

Third, the type of conduct to which the Legislature intended section 850.4 immunity apply is indicated by its choice of the phrase "injury caused in fighting fires." "The language 'injury caused' necessarily implies that an 'act or omission' has occurred . . . ." (*Heimberger v. City of Fairfield* (1975) 44 Cal.App.3d 711, 715 [117 Cal.Rptr. 482] (*Heimberger*).) The language "in fighting fires" further indicates the Legislature intended to restrict the scope of section 850.4 immunity to public entities' and their employees' tortious acts or omissions "committed during the course of fighting fires." (*Lewis v. Mendocino Fire Protection Dist.* (1983) 142 Cal.App.3d 345, 347 [190 Cal.Rptr. 883] (*Lewis*); see also *Potter v. City of Oceanside* (1981) 114 Cal.App.3d 564, 566 [170 Cal.Rptr. 753] [no § 850.4 immunity when "alleged negligent act occurred before any fire started"].) Included within the course of fighting fires are acts or omissions of public entities or employees

in responding to a fire, because "[g]etting to the fire quickly is of the very essence of firefighting." (*City and County of San Francisco v. Superior Court* (1984) 160 Cal.App.3d 837, 842 [207 Cal.Rptr. 6].)

In sum, we conclude that by relieving public entities and employees of liability "for any injury caused in fighting fires" under section 850.4, the Legislature intended immunity to apply to any claim based on death, personal injury, or property damage that results from an act or omission of a public entity or employee while responding to or combating an actual fire.[3]

### b. *Exception Language*

■ The scope of section 850.4 immunity "for any injury caused in fighting fires" is expressly limited by the prefatory phrase "except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code." By excepting from immunity claims based on certain provisions of the Vehicle Code, section 850.4 conforms to the general pattern that "sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." (*Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1] (*Cochran*); accord, *People ex rel. Grijalva v. Superior Court* (2008) 159 Cal.App.4th 1072, 1079 [72 Cal.Rptr.3d 53] (*Grijalva*); *Wright v. State of California* (2004) 122 Cal.App.4th 659, 672 [19 Cal.Rptr.3d 92].)

Among the statutory exceptions referred to in section 850.4 is Vehicle Code section 17001: "A public entity is liable for death or injury to person or property *proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment*." (Veh. Code, § 17001, italics added.)[4]

---

[3] This interpretation of the scope of section 850.4 immunity is consistent with the case law, which has broadly applied the immunity to various types of injuries that resulted from acts or omissions of firefighters while responding to or combating a fire. (See, e.g., *State of California v. Superior Court* (2001) 87 Cal.App.4th 1409 [105 Cal.Rptr.2d 499] [death allegedly caused by negligent advice and inadequate warnings given by state to pilot attempting to drop fire retardant on brush fire]; *Colapinto, supra*, 230 Cal.App.3d 147 [destruction of building by alleged negligence of firefighters in handling fire]; *City and County of San Francisco v. Superior Court, supra*, 160 Cal.App.3d 837 [property damage caused by failure to arrive at fire timely]; *Bettencourt v. State of California* (1975) 51 Cal.App.3d 892 [124 Cal.Rptr. 542] [loss of cattle that escaped through wire fence cut by firefighters to fight grass fire]; *Heimberger, supra*, 44 Cal.App.3d 711 [personal injury during attempted rescue of person trapped in burning building].)

[4] CAL-FIRE's contention that it is entitled to "*absolute* immunity . . . for any injury caused by the alleged negligence of firefighters engaged in firefighting activities" (italics added) is untenable because it completely ignores the language of section 850.4 expressly excepting from immunity injuries for which Vehicle Code section 17001 imposes liability. Under established rules of statutory construction, we may not "omit what has been inserted" (Code

Read literally, this exception means that a public entity that would otherwise be immune under section 850.4 for an injury that results from the entity's or its employee's act or omission while responding to or combating a fire, would be liable under Vehicle Code section 17001 if the injury results from the tortious operation of a motor vehicle. As the Varshocks put it: "By its plain terms," the language of section 850.4 "creates an *exception* to the immunity otherwise provided for firefighting operations. In other words, if the Vehicle Code exception applies, then there is no government immunity *even if* the injury was 'caused in fighting fires.' "

■ We concede that the Varshocks' interpretation of the interplay of the language of the section 850.4 immunity and the Vehicle Code section 17001 exception is consistent with the plain language of the statute and has the virtue of simplicity. Ordinarily, that would be the end of the matter. (See, e.g., *Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [95 Cal.Rptr.3d 588, 209 P.3d 923] (*Arias*) [no need for judicial construction when statutory language clear and unambiguous].) But language that appears clear and unambiguous on its face may be shown to have a latent ambiguity when some extrinsic factor creates a need for interpretation or a choice between two or more possible meanings. (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495, fn. 18 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741] (*Quarterman*).) A latent ambiguity exists where, for example, a literal interpretation of a statute would frustrate rather than promote the purpose of the statute or would produce absurd consequences the Legislature did not intend. (*Stanton v. Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372] (*Stanton*); *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495 [35 Cal.Rptr.3d 596] (*Coburn*).) For the two reasons discussed below, we find such an ambiguity in the statute at issue here.

First, the Varshocks' interpretation of the Vehicle Code section 17001 exception, if accepted, would eliminate a very large portion of the immunity the Legislature intended to confer under section 850.4. The general rule is that exceptions "are 'qualifiers, not nullifiers' " and must "be strictly construed." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 736 [248 Cal.Rptr. 115, 755 P.2d 299].) As we have explained, the language of section 850.4 indicates the Legislature intended public entities and employees to be immune from claims for injuries caused by their efforts in responding to and combating fires. Such efforts routinely include operation of fire engines and

Civ. Proc., § 1858) or "render[] a part of a statute meaningless or inoperative" (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56]).

other motor vehicles both to get to a fire and, once there, to fight the fire. For example, firefighters might drive a fire engine to a burning building, maneuver the engine around the building, operate the hoses on the engine to extinguish the fire, operate the ladders on the engine to rescue someone trapped in the building and then transport the rescued person out of the zone of danger. Under the literal interpretation of the statute proposed by the Varshocks, a firefighter's employer would be subject to Vehicle Code section 17001 liability if, in doing any of these various things, a tortious act or omission in the firefighter's operation of the fire engine causes injury.[5] This literal interpretation is thus untenable because "it ascribes an unreasonably expansive meaning to the [Vehicle Code section 17001 exception language] and concomitantly restricts the operation of the [section 850.4 immunity language]," contrary to the apparent legislative intent. (*Lungren v. Deukmejian, supra,* at pp. 735–736; see *Rancho Viejo v. Tres Amigos Viejos* (2002) 100 Cal.App.4th 550, 562 [123 Cal.Rptr.2d 479] [rejecting construction that would frustrate statute's purpose].)

Second, the Varshocks' interpretation of the Vehicle Code section 17001 exception to section 850.4 immunity would expand liability far beyond that recognized in the case law pertaining to tortious operation of motor vehicles used for firefighting. The only cases that impose liability or recognize potential liability in that context were decided under the predecessor statutes to Vehicle Code section 17001.[6] These cases indicate that the type of injury for which liability may exist under Vehicle Code section 17001 is one caused by a collision while a fire engine or other emergency vehicle is being driven to the site of a fire in response to an emergency call. (See, e.g., *Torres v. City of Los Angeles* (1962) 58 Cal.2d 35, 38, 55 [22 Cal.Rptr. 866, 372 P.2d 906] [city liable for personal injuries caused by collision of two fire engines

[5] For example, according to the Varshocks' interpretation of the statute, if a firefighter negligently misdirected a fire engine hose from which he was spraying water on a burning building and thereby injured a person trapped in the building, the firefighter's employer would be liable under Vehicle Code section 17001. (See *Bright v. East Side Mosquito etc. Dist.* (1959) 168 Cal.App.2d 7, 12–14 [335 P.2d 527] (*Bright*) [cause of action for negligent operation of motor vehicle stated by allegations that defendants so negligently operated spraying equipment mounted on trailer attached to jeep that they created chemical fog blanketing highway and causing collisions in which plaintiff was injured].)

[6] Vehicle Code section 17001 was enacted in 1959 (Stats. 1959, ch. 3, § 2, pp. 1523, 1653) and derived from Vehicle Code former section 400 (Stats. 1935, ch. 27, p. 152), which itself derived from Civil Code former section 1714½ (Stats. 1929, ch. 260, § 1, p. 565). (See *Yarrow v. State of California* (1960) 53 Cal.2d 427, 440 [2 Cal.Rptr. 137, 348 P.2d 687]; *Reenders v. City of Ontario* (1977) 68 Cal.App.3d 1045, 1050 [137 Cal.Rptr. 736].) Each of these statutes subjected public entities to liability for an employee's negligent operation of a motor vehicle. (See *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 923–925 [50 Cal.Rptr.2d 309, 911 P.2d 496] (*Ladd*) [discussing liability under these statutes].)

answering alarm]; *Raynor v. City of Arcata* (1938) 11 Cal.2d 113, 118–121 [77 P.2d 1054] [city may be liable for injuries caused in collision involving automobile driven by fire chief in response to alarm]; *Peerless Laundry Serv. v. City of L. A.* (1952) 109 Cal.App.2d 703, 706–707 [241 P.2d 269] [city liable when employee responding to emergency call crashed fire truck into building]; *Stone v. San Francisco* (1938) 27 Cal.App.2d 34, 35, 41 [80 P.2d 175] [city and county may be liable for injuries caused in collision involving automobile driven by policeman in response to fire call].) By contrast, when a motor vehicle was used at the scene of a fire "as a method to fight a fire," section 850.4 immunity was held to prevail over Vehicle Code section 17001 liability. (*Colapinto, supra*, 230 Cal.App.3d at p. 153.)[7] The literal interpretation of the exception urged by the Varshocks would expand liability to that situation. The purpose of sovereign immunity statutes, however, is "not to expand the rights of plaintiffs in suits against governmental entities, but to confine governmental liability to rigidly delineated circumstances." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

■ In short, we reject as inconsistent with the Legislature's intent the literal interpretation of the interplay of the language of section 850.4 immunity and the Vehicle Code section 17001 exception urged by the Varshocks.

---

[7] This aspect of *Colapinto* is not mere dictum, as the Varshocks contend. Although earlier in its opinion the court had determined summary judgment was proper on another ground (*Colapinto, supra*, 230 Cal.App.3d at pp. 151–152), when a decision is based on two separate grounds, neither is dictum (*King v. Pauly* (1911) 159 Cal. 549, 554–555 [115 P. 210]); rather, each ground is equally valid and constitutes an alternative holding in support of the judgment (*Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 650 [20 P.2d 940]). We agree with *Colapinto* to the extent it holds section 850.4 immunity applies to injuries caused by the negligent operation of a motor vehicle at the scene of a fire when the vehicle is used as a means to fight the fire.

We note, however, that Vehicle Code section 17001 liability does not appear to be limited to tortious operation of motor vehicles *on streets and highways*, as suggested in *Colapinto, supra*, 230 Cal.App.3d at page 153. The text of Vehicle Code section 17001 contains no such limitation, and cases have recognized potential liability when motor vehicles were operated at other locations. (See, e.g., *Bright, supra*, 168 Cal.App.2d 7 [liability may exist under predecessor to Veh. Code, § 17001 for injury in collision caused by emission from off-road motor vehicle of spray that decreased visibility on nearby highway]; *Behling v. County of Los Angeles* (1956) 139 Cal.App.2d 684 [294 P.2d 534] [reversing dismissal of claim under predecessor to Veh. Code, § 17001 for injury caused by operation of bulldozer on ungraded, unpaved dirt roadway not open to public for vehicular travel]; *Marshall v. County of Los Angeles* (1955) 131 Cal.App.2d 812 [281 P.2d 544] [reversing dismissal of claim under predecessor to Veh. Code, § 17001 for injury caused by operation of dump truck on prison farm].) We also note our Supreme Court cited *Colapinto* with approval for the proposition that Vehicle Code section 17001 does not apply when a motor vehicle is used as a method to fight a fire but left out the qualification concerning operation of motor vehicles on streets and highways. (*Ladd, supra*, 12 Cal.4th at p. 925.)

(See, e.g., *Arias, supra,* 46 Cal.4th at p. 979 [literal construction will not control if it would frustrate manifest purpose of enactment as a whole]; *Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735 [intent prevails over letter]; *People v. Kirk* (2006) 141 Cal.App.4th 715, 720 [46 Cal.Rptr.3d 258] [interpretation that renders related provisions nugatory should be avoided].) Because a literal interpretation would frustrate the Legislature's intent, the statute has a latent ambiguity that we must resolve. (*Stanton, supra,* 28 Cal.3d at p. 115; *Coburn, supra,* 133 Cal.App.4th at p. 1495.)

## 2. *Legislative History*

■ Where, as here, "the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment." (*Klein, supra,* 50 Cal.4th at p. 77; see also *Quarterman, supra,* 55 Cal.App.4th at pp. 1371, 1373–1375 [considering legislative history when statute contained latent ambiguity].) We thus consult the legislative history for guidance it may provide on the interplay of the language of the section 850.4 immunity and the Vehicle Code section 17001 exception.

Section 850.4 was enacted as part of the California Tort Claims Act (Gov. Code, § 810 et seq.) in 1963 exactly as it was proposed by the California Law Revision Commission (the Commission) in its Recommendation Relating to Sovereign Immunity, Number 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) (4 Cal. Law Revision Com. Rep. (1963) pp. 807–886 (hereafter, 4 California Law Revision Commission Report)). (See Stats. 1963, ch. 1681, § 1, pp. 3266, 3279; *Heimberger, supra,* 44 Cal.App.3d at p. 714.) It has remained unchanged since that time. (See § 850.4.) The report of a commission that proposes a statute subsequently adopted is given "substantial weight" in construing the statute, especially where, as here, the proposed statute is adopted by the Legislature without any change. (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 249 [66 Cal.Rptr. 20, 437 P.2d 508] (*Van Arsdale*), overruled on other grounds in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696, 702, fn. 4 [21 Cal.Rptr.2d 72, 854 P.2d 721]; see also *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003, fn. 6 [47 Cal.Rptr.2d 478, 906 P.2d 440] [Commission report entitled to substantial weight in construing Tort Claims Act].) "[I]n such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill." (*Van Arsdale,* at p. 250.) Moreover, as it relates to section 850.4, our Supreme Court and other Courts of Appeal have considered the Commission's report

as reflective of the Legislature's intent. (See, e.g., *Heieck and Moran v. City of Modesto* (1966) 64 Cal.2d 229, 233, fn. 3 [49 Cal.Rptr. 377, 411 P.2d 105]; *Lewis, supra,* 142 Cal.App.3d at p. 347; *Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349, 351–352 [151 Cal.Rptr. 791] *(Razeto); Heimberger,* at p. 714.) We find several portions of the Commission's report to be helpful in determining legislative intent regarding the interplay of section 850.4 immunity and the Vehicle Code section 17001 exception, as discussed below.

The Commission began its discussion of sovereign immunity for firefighting by stating that provision of fire protection services is a governmental function but that "[i]n California, the Legislature has removed a substantial portion of this immunity by providing that *public entities are liable for the negligent operation of emergency vehicles, including firefighting equipment, when responding to emergency calls.*" (4 Cal. Law Revision Com. Rep., *supra,* at p. 828, italics added.) The Commission then expressed its public policy view that "*[i]n emergency situations, it is more desirable for firefighters to act diligently to combat a conflagration, without thought of the possible liabilities that might be incurred, than it is to spread the loss from the fire by imposing such cost upon the taxpayers.*" (*Ibid.,* italics added.) Based upon this view, the Commission recommended enactment of legislation "containing the following principles: [¶] . . . [¶] . . . Except to the extent that public entities are liable under Vehicle Code Sections 17000 to 17004 for the tortious operation of vehicles, public entities and public personnel should not be liable for injuries caused in fighting fires . . . . [*F*]*iremen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable. The liability created by the Vehicle Code for tortious operation of emergency fire equipment should be retained, however, for such liability does not relate to the conduct of the actual firefighting operation.*" (*Ibid.,* italics added.)

Thus, when considering sovereign immunity for firefighting activities the Commission had two policy objectives: (1) to shield from subsequent jury scrutiny the actions firefighters take *while combating a fire*; and (2) to preserve the existing liability for tortious operation of a motor vehicle *when responding to an emergency call.* Without an exception for injuries caused by such tortious operation of a motor vehicle, the liability the Commission wanted to retain would have been encompassed within the immunity for injuries caused in fighting fires because "[g]etting to the fire quickly is of the very essence of firefighting." (*City and County of San Francisco v. Superior*

*Court, supra,* 160 Cal.App.3d at p. 842.)[8] The Commission therefore prefaced the proposed immunity "for any injury caused in fighting fires" with the qualifier "except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code," and explained that "[s]ection 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles). . . ." (4 Cal. Law Revision Com. Rep., *supra,* at p. 862.)

### 3. *Resultant Interpretation*

Based on the statutory language of section 850.4, the interpretive case law, and the legislative history discussed above, we conclude that whether immunity or liability applies to injuries resulting from the tortious operation of a motor vehicle in fighting a fire depends on temporal, spatial and functional distinctions. The Legislature intended to immunize the conduct of firefighters *while at the scene of a fire and actually combating a fire* because imposition of liability in such situations might deter them from making necessary decisions quickly under extremely stressful and dangerous circumstances. (See *State of California v. Superior Court, supra,* 87 Cal.App.4th at p. 1414 ["Decisions must often be made under stressful circumstances and require a balancing of risks against the odds of success which must be imperfect at best."]; 4 Cal. Law Revision Com. Rep., *supra,* at pp. 828, 862 [firefighters should not be deterred from taking actions needed to combat fire by fear of liability].) At the same time, the Legislature intended to except from immunity liability for injuries resulting from the tortious conduct of firefighters *while driving a motor vehicle from another location to the scene of a fire* because such conduct is not subject to the same stresses and dangers involved in the conduct of *actual* firefighting operations at the scene of a fire. (See 4 Cal. Law Revision Com. Rep., *supra,* at p. 828 ["such liability does not relate to the conduct of the actual firefighting operation"]; see also cases discussed at pp. 645–646, *ante.*)

■ We therefore hold that when a firefighter operates a motor vehicle at the scene of a fire as part of efforts to rescue persons or property from the fire or otherwise combat the fire, immunity under section 850.4 exists for any

---

[8] See also *Howard v. San Francisco* (1875) 51 Cal. 52 (city and county not liable for negligence of fire department employees in running steam fire engine against horse and buggy while going to fire); *Lewis v. Cleveland* (1993) 89 Ohio App.3d 136 [623 N.E.2d 1233, 1234–1235] (immunity applies to firefighter's operation of motor vehicle while at fire, *proceeding to fire,* or *responding to emergency alarm*); *National Railroad v. Catlett Volunteer Fire* (1991) 241 Va. 402 [404 S.E.2d 216, 219] ("We think that both definition and common sense compel the conclusion that the operation of a fire truck *en route to the scene of a fire* is incident to fighting the fire." (italics added)).

injury that results from the firefighter's tortious act or omission in operation of the motor vehicle. We further hold that this immunity under section 850.4 does not apply, and potential liability under the Vehicle Code section 17001 exception exists, if injury results from a firefighter's tortious act or omission in the operation of a motor vehicle while proceeding from another location to a fire in response to an emergency call.

This interpretation of section 850.4, unlike those urged by the parties, harmonizes the immunity language with the Vehicle Code section 17001 exception language where, as here, firefighting involves operation of a motor vehicle (*State Farm, supra,* 32 Cal.4th at p. 1043) and results in " 'a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity' " (*City of Poway, supra,* 229 Cal.App.3d at p. 858). This interpretation also yields a "workable definition" of the respective scopes of immunity and liability, which is crucial in the context of sovereign immunity. (See *Johnson v. State of California* (1968) 69 Cal.2d 782, 793 [73 Cal.Rptr. 240, 447 P.2d 352].)

B. *Application of Section 850.4 Immunity and the Vehicle Code
 Section 17001 Exception to This Case*

Having determined how section 850.4 immunity and the Vehicle Code section 17001 exception work together in cases involving the tortious operation of a motor vehicle during the course of fighting a fire, we must now determine whether the trial court correctly granted CAL-FIRE's motion for summary judgment. The Varshocks contend the summary judgment must be reversed on two grounds: (1) CAL-FIRE did not meet its initial burden to establish section 850.4 immunity, because it did not negate the Varshocks' theory of liability under the Vehicle Code section 17001 exception to immunity and did not include an adequate separate statement of undisputed facts as part of its motion; and (2) triable issues of material fact preclude summary judgment. We will address each contention in turn.

1. *CAL-FIRE Satisfied Its Initial Burden in Moving for Summary
 Judgment*

According to the Varshocks, CAL-FIRE did not meet its initial burden in moving for summary judgment because it did not negate their theory of liability under the Vehicle Code section 17001 exception. We disagree.

A defendant moving for summary judgment has an initial burden to show the plaintiff's "action has no merit," and it may sustain this burden by establishing a "complete defense" to the plaintiff's claims. (Code Civ. Proc., § 437c, subds. (a), (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850 [107 Cal.Rptr.2d 841, 24 P.3d 493] [generally describing moving defendant's burden]; *Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289–290 [85 Cal.Rptr.2d 331] [to shift burden to plaintiff, defendant must establish each element of affirmative defense].) Section 850.4, under which Cal-FIRE moved for summary judgment, operates as an affirmative defense. (*City and County of San Francisco v. Superior Court, supra,* 160 Cal.App.3d at p. 842; *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 689 [194 Cal.Rptr. 582], disapproved on unrelated grounds by *Bunch v. Coachella Valley Water Dist.* (1997) 15 Cal.4th 432, 447–448 [63 Cal.Rptr.2d 89, 935 P.2d 796].) Where, as here, an affirmative defense contains an exception, a defendant must also negate the exception as part of its initial burden on summary judgment if, but only if, the complaint alleges facts triggering potential applicability of the exception. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 856 [120 Cal.Rptr.3d 90] (*Eriksson*); *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858–859 [62 Cal.Rptr.2d 16] (*Bacon*); *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1739–1740 [22 Cal.Rptr.2d 781]; but see *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1292–1293 [28 Cal.Rptr.3d 92] [defendant need not refute allegations that trigger exception to defense].) Hence, whether CAL-FIRE had an initial burden both to establish immunity under section 850.4 and to negate liability under the Vehicle Code section 17001 exception in order to shift the burden to the Varshocks to establish a triable issue of fact depends on the Varshocks' pleadings.

In the first amended complaint, the Varshocks alleged the firefighters "operated a fire truck in a way that breached [their] duty of reasonable care to the [Varshocks]" and "so negligently and carelessly . . . drove, operated, controlled, parked and maintained" the fire engine that it became engulfed in flames while parked at the Property, which led to Thomas's death and Richard's injuries.[9] Although these and other allegations strongly suggest that any negligence in the operation of the fire engine occurred at the scene of a fire during the course of firefighters' efforts to combat the fire, they are not free from doubt and are arguably sufficient to make the Vehicle Code section 17001 exception to section 850.4 immunity *potentially* applicable. (See Code

[9] More specifically, the Varshocks alleged the firefighters "negligently, carelessly and wantonly" (1) invited Thomas and Richard into the fire engine and then drove it to a dangerous place; (2) failed to park the engine a safe distance away from the mobilehome, which was a flammable structure; (3) allowed the engine to catch fire; and (4) abandoned Thomas in the engine when he could have been rescued.

Civ. Proc., § 452 [to determine legal effect of complaint, allegations must be liberally construed]; *Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885 [164 Cal.Rptr. 510, 610 P.2d 407] [pleadings define issues relevant to summary judgment motion].) Therefore, we hold that as part of its initial burden in moving for summary judgment, CAL-FIRE had to negate the potential applicability of the Vehicle Code section 17001 exception to section 850.4 immunity. (See *Eriksson, supra*, 191 Cal.App.4th at p. 856; *Bacon, supra*, 53 Cal.App.4th at pp. 858–859.)

Here, the same evidence that established CAL-FIRE's immunity under section 850.4 also negated its liability under the Vehicle Code section 17001 exception. In its motion for summary judgment, CAL-FIRE included declarations from three firefighters who participated in the firefighting activities at the Property. Those declarations established that the fire captain ordered Thomas and Richard into the fire engine because conditions were too dangerous to leave them outside and then proceeded to the Property to try to extinguish the fire. When it became clear the mobilehome could not be saved, the fire captain ordered an evacuation but the engine "died," Thomas was killed, and Richard and the firefighters were severely burned. Thus, Thomas died and Richard was burned at the scene of a fire during the course of the firefighters' efforts to rescue them and to prevent the mobilehome from being destroyed by the fire. The injuries of which the Varshocks complain did not occur as the result of negligent operation of the fire engine while the firefighters were proceeding from another location to a fire in response to an alarm. The firefighters were already at the scene of the Harris Ranch fire when Thomas and Richard approached them and demanded that the firefighters "do something" to save their home. Therefore, CAL-FIRE's evidence was sufficient both to establish section 850.4 immunity and to negate liability under the Vehicle Code section 17001 exception, as we have construed the statute. (See pp. 649–650, *ante.*)

We are not persuaded by the Varshocks' argument that summary judgment should have been denied simply because CAL-FIRE did not identify in the separate statement included among its moving papers all the facts that established its immunity defense. Rulings on summary judgment motions are to be based on "all of the evidence set forth in the papers, except that to which objections have been made and sustained." (Code Civ. Proc., § 437c, subd. (c).) Although a party moving for summary judgment must include a separate statement that sets forth the material facts it contends are undisputed (*id.*, subd. (b)(1)), a trial court is not required to deny a motion simply because the moving party has not done so and may, in its discretion, consider evidence contained elsewhere in the motion (*ibid.*; *Zimmerman, Rosenfeld,*

*Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1475 [33 Cal.Rptr.3d 111]; *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 523 [23 Cal.Rptr.3d 1]). In the exercise of this discretion, the trial court should consider whether the facts are "relatively simple" and were "clearly called to the attention of court and counsel"; whether "evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all"; and, most importantly, whether, despite the absence of a proper separate statement, the opposing party has sufficient notice of the evidence it must dispute to defeat the motion. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [125 Cal.Rptr.2d 499]; see also *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1481 [1 Cal.Rptr.3d 185].)

CAL-FIRE's summary judgment motion involved a single legal issue of immunity under section 850.4, which turned on a relatively small amount of evidence describing the sequence of events that led up to Thomas's death and Richard's injuries—evidence which the Varshocks did not materially dispute. CAL-FIRE's separate statement referenced the paragraphs of the declarations on which it relied, although it did not explicitly state the facts contained in those paragraphs. The Varshocks were able to oppose the motion with a declaration from an expert witness and other evidence and arguments. On this record, we cannot say the trial court abused its discretion in considering facts not specifically included in CAL-FIRE's separate statement when it ruled on the motion. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118 [103 Cal.Rptr.3d 811] [no abuse of discretion when critical facts adequately identified and plaintiff's ability to present factual dispute not impaired]; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 437–438 [60 Cal.Rptr.3d 359] [no abuse of discretion when trial court considered evidence on dispositive issue not specifically referenced in separate statement].)

In sum, we hold that CAL-FIRE satisfied its initial burden in moving for summary judgment by submitting evidence that established immunity under section 850.4 and negated liability under the Vehicle Code section 17001 exception. The burden then shifted to the Varshocks to "set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2); see *Bacon, supra,* 53 Cal.App.4th at p. 859 [once defendant established immunity and negated exception, burden shifted to plaintiff to show triable issue of fact as to applicability of exception].)

### 2. *The Varshocks Did Not Raise a Triable Issue of Material Fact*

The Varshocks contend the trial court erred in granting CAL-FIRE's motion for summary judgment because "the facts here support a claim for negligence in the operation of the fire truck" in that "the firefighters . . .

us[ed] it to transport civilians into a zone of extreme danger." Although the Varshocks assert there are triable issues of material fact that preclude entry of summary judgment, they have not directed us to any specific factual dispute in the record. The Varshocks' briefing makes clear that what they are really disputing is the *legal effect of the underlying facts*, not the underlying facts themselves. Whether a given set of facts triggers application of the Vehicle Code section 17001 exception to section 850.4 immunity presents a question of law for our independent assessment. (See, e.g., *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 544 [35 Cal.Rptr.2d 574]; *Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].) We will review the facts the Varshocks presented in opposition to CAL-FIRE's summary judgment motion to determine their legal effect.

The centerpiece of the Varshocks' opposition to CAL-FIRE's motion was a declaration from a retired fire chief whom they retained as an expert witness. The retired fire chief reviewed, among other documents, various deposition transcripts and other discovery materials; various statutes and regulations pertaining to firefighting; and two reports of investigations of the fire at the Property, one prepared by the Division of Occupational Safety and Health of the Department of Industrial Relations, and the other by CAL-FIRE's Serious Accident Review Team.[10] In his declaration, the retired fire chief opined that the fire captain involved in the firefighting activities at the Property violated various "Firefighter Safety Rules." Specifically, and largely in reliance on the reports of the investigations, the retired fire chief stated the fire captain committed "negligent and wrongful acts and omissions in [his] operation of the fire truck" when he (1) drove the fire engine, with Thomas and Richard aboard, towards the Property without first verifying there was an adequate water supply or ensuring there was an adequate escape route; (2) drove the fire engine into a location that had poor access and inadequate space to turn around; and (3) parked the fire engine too close to structures on the Property that were flammable or burning and in an orientation that did not allow for quick escape.[11]

---

[10] The Varshocks attached copies of the reports of the investigations as exhibits to the declaration of one of their attorneys. CAL-FIRE objected to these exhibits on the grounds of relevance and hearsay. The trial court overruled these objections. Because CAL-FIRE has not challenged this evidentiary ruling on appeal, we will assume the trial court ruled correctly and consider the investigators' reports in reviewing the propriety of the trial court's decision to grant summary judgment. (See Code Civ. Proc., § 437c, subd. (c) [to determine propriety of summary judgment, court must consider all the evidence except that to which objections were sustained].)

[11] The retired fire chief also opined that (1) the fire captain put Thomas's and Richard's safety and lives at risk by ordering them to board the fire engine and then proceeding towards the fire, in disobedience of an order from the incident commander not to get in front of the fire

A claim based on such allegations of negligence is exactly the type of claim the Legislature intended section 850.4 immunity to cover. None of the decisions, acts or omissions concerning the fire captain's operation of the fire engine criticized by the Varshocks' expert witness occurred while the crew was proceeding in the fire engine from another location to the Property in response to an alarm—the fire engine and crew were already at the scene of the fire when the captain decided to take Thomas and Richard on board and to attempt to extinguish the fire at their mobilehome. The wisdom of decisions made under such stressful and dangerous circumstances is unlikely to be enhanced by subjecting public entities to financial liability simply because the decisions involved an employee's operation of a motor vehicle. (See *State of California v. Superior Court, supra*, 87 Cal.App.4th at p. 1414.) Moreover, to decide whether the conduct of the fire captain criticized by the Varshocks' expert witness was in fact negligent, a jury would have to determine whether that conduct was reasonable under the circumstances. (See *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 997 [35 Cal.Rptr.2d 685, 884 P.2d 142]; *Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546 [25 Cal.Rptr.2d 97, 863 P.2d 167].) As we have explained, however, section 850.4 immunity was enacted because the Legislature intended that "firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable." (4 Cal. Law Revision Com. Rep., *supra*, at p. 862; see *Van Arsdale, supra*, 68 Cal.2d at p. 249.)

■ In sum, the Varshocks' own evidence established that the fire captain's negligence in the operation of the fire engine that allegedly caused their injuries occurred as part of CAL-FIRE's efforts to rescue Thomas and Richard and to extinguish the fire raging at the Property. Section 850.4 "protect[s] firefighters and firefighting entities from incurring a financial penalty based on the 'fire protection service . . .' . . . they provide, or do not provide." (*Grijalva, supra*, 159 Cal.App.4th at p. 1078.) Because section 850.4 thus immunized CAL-FIRE from the claims alleged in the Varshocks' complaint, and the Vehicle Code section 17001 exception did not impose liability, the trial court properly granted the motion for summary judgment. (*Cochran, supra*, 155 Cal.App.3d at pp. 413–414; *Razeto, supra*, 88 Cal.App.3d at p. 353.)

---

and (2) after deciding to evacuate the site of the fire, the fire captain did not properly maneuver the fire engine to allow everyone to escape. The trial court, however, sustained CAL-FIRE's objections to these portions of the retired fire chief's declaration on grounds of hearsay, lack of personal knowledge and lack of foundation. Since the Varshocks do not challenge these evidentiary rulings, we consider the matter to have been properly excluded and do not consider it in reviewing the propriety of the trial court's decision to grant summary judgment. (Code Civ. Proc., § 437c, subd. (c); *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015 [120 Cal.Rptr.2d 281].)

## DISPOSITION

The judgment is affirmed.

McDonald, Acting P. J., and McIntyre, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 29, 2011, S193295. Corrigan, J., did not participate therein.