Filed 4/19/17

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Plumas)

----

| | |
|---|---|
| REBECCA MEGAN QUIGLEY, | C079270 |
| Plaintiff and Appellant, | (Super. Ct. No. CV1000225) |
| v. | |
| GARDEN VALLEY FIRE PROTECTION DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Plumas County, Janet Hilde, Judge.  Affirmed.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen; Law Offices of Reiner & Slaughter, Russell Reiner, Todd E. Slaughter and April K. Gesberg for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Joseph A. Salazar, Jr., Jeffry A. Miller and Jonna D. Lothyan for Defendants and Respondents.

While assigned to fight a wildfire, plaintiff and appellant Rebecca Megan Quigley was severely injured when a water truck ran over her as she slept at the fire base camp.

1

She sued, inter alia, defendants and respondents Garden Valley Fire Protection District, Chester Fire Protection District, and their employees Frank DelCarlo, Mike Jellison, and Jeff Barnhart for damages, claiming she was injured as a result of their negligence, a dangerous condition of public property, and defendants' failure to warn. The trial court granted nonsuit against plaintiff's complaint on the bases that defendants were statutorily immune from liability and the firefighter's rule prevented plaintiff from recovering. Because we agree defendants are immune from liability for plaintiff's injuries, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In our review of a judgment of nonsuit, we " 'view the facts in the light most favorable to the plaintiff.' " (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.) Thus, "the court must accept as true all favorable facts asserted in the plaintiff's opening statement, indulge all legitimate inferences from those facts, and disregard all conflicting evidence." (*Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1296.)

The "Silver Fire" broke out in the Plumas National Forest on September 19, 2009. The United States Forest Service (the Forest Service) initially managed the effort to fight the fire. It set up a base camp at the Plumas County Fairgrounds. The base camp included a sleeping area for firefighters. Forest Service rules required the Forest Service, when establishing a camp, to provide a quiet, shaded sleeping area away from smoke, noise, and dust, to post signs designating the area, and to rope off the area.

The Plumas County Fairgrounds has a racetrack with a large grassy infield. The Forest Service set up a shower unit on the infield and arranged for an independent contractor to service the unit.[1] The unit included two 1,500-gallon bladders to hold

---

[1] The independent contractor's potential liability is not an issue before us.

water: one bladder held fresh water and the other collected used water from the showers. Employees of the independent contractor would drive 30,000-pound water trucks onto the infield to service the bladders. The truck drivers were never given a map or directions showing where they could drive on the infield to access the bladders.

Fearing the fire might affect structures, the Forest Service called in a non-firefighting team, referred to as NorCal Team 1 (NorCal 1), to manage the fire and the base camp. NorCal 1 took control at noon, September 20. Individual defendants DelCarlo, Jellison, and Barnhart were members of NorCal 1. The three men, all retired Forest Service employees, became employees of defendant local fire agencies Chester Fire Protection District and Garden Valley Fire Protection District in order to serve on NorCal 1.

Plaintiff was a Forest Service firefighter on a hotshot crew working the Silver Fire. She and her crew returned to the base camp around 9:00 p.m., September 20, after fighting the fire all day. The designated sleeping area was full, so most of the crew members slept in and around some horse barns in filthy conditions. Not wanting to sleep there, plaintiff asked her supervisor if she could sleep on the infield. Her supervisor agreed. Other people were already sleeping on the infield in tents and in sleeping bags on the ground. Earlier that day, DelCarlo had ordered a California Conservation crew to sleep near the shower unit, and he had authorized a different hotshot crew to sleep on the infield. The infield was never signed or roped off as a sleeping area.

Plaintiff arose the next day, September 21, and left the base camp with her crew to fight the fire. During the day, Barnhart, a safety officer, inspected the camp, including the shower unit and the infield. He saw the tents erected in the infield by the California Conservation crew. Nevertheless, he recorded on a form that all sleeping areas were separated from parking, shaded, and posted as a "sleeping area (no vehicles allowed)."

3

Plaintiff came back to the base camp that evening around 9:00 p.m. As was the case the previous night, the designated sleeping area was full, so her crew returned to the filthy horse barns to sleep. Plaintiff again received permission to sleep on the infield. As she had the night before, plaintiff slept on the grass in her sleeping bag.

Around 10:00 p.m. that evening, an employee of the independent contractor drove his water truck onto the infield to service the shower unit. He retrieved the used water, and as he drove off the infield, he ran over plaintiff. The truck crushed plaintiff's chest, ribs, lungs and left shoulder, and it fractured her back. The accident permanently damaged her heart, lungs, and eyes.

Following plaintiff's opening statement at trial reciting the above facts, defendants moved for nonsuit. Defendants contended they were immune from liability under various provisions of the Government Claims Act (the Act) (Gov. Code, § 810 et seq.).[2] Of relevance here, defendants claimed they were not liable pursuant to the immunity provided by section 850.4, which immunizes public agencies and their employees against claims "for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires." Defendants also contended they were not liable under the common law firefighter's rule, which generally prevents a firefighter from recovering damages for negligence that precipitated the summoning of the firefighter, including "when an officer is injured by the negligence of an officer from a different public safety agency in a joint operation." (*Terry v. Garcia* (2003) 109 Cal.App.4th 245, 253.)

Over plaintiff's opposition that the statutory immunity was waived and did not apply and that the firefighter's rule did not apply, the trial court granted defendants'

---

[2] Undesignated statutory references are to the Government Code.

4

motion for nonsuit. Initially, the court ruled defendants had not waived their immunity defense because it is jurisdictional and can be raised at any time. Substantively, the court held defendants were immune from liability under section 850.4 because plaintiff's injuries were the result of the condition of a firefighting facility (the base camp) and were caused by fighting the fire. Following plaintiff's motion for new trial, the trial court reaffirmed its ruling that section 850.4 was a jurisdictional immunity that barred plaintiff's action and also held that the firefighter's rule barred plaintiff's action because she suffered her injuries during a joint response by different public agencies to a public safety incident.

## DISCUSSION

Plaintiff contends the trial court erred in granting nonsuit because defendants waived their claim to statutory immunity and, regardless, the immunity does not apply because plaintiff was not injured by a condition of a firefighting facility giving rise to immunity under section 850.4. "We review the grant of a nonsuit de novo" (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1412), upholding the nonsuit "only where it is clear plaintiff's counsel has stated all facts he expects to prove and such facts do not constitute a cause of action" (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 305). Here, we conclude the trial court did not err in awarding nonsuit because section 850.4 immunizes defendants from liability for plaintiff's injuries and defendants did not waive their claim to immunity. In light of this conclusion, we need not decide whether the firefighter's rule would also apply to prevent plaintiff's recovery.

### 1.0    Waiver of Immunity

We first address and reject plaintiff's contention that defendants waived their claim to immunity under section 850.4 by not expressly and separately pleading that immunity in their answer. As the trial court determined, governmental immunity is

5

jurisdictional and may be raised at any time. (*Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393, 1404, fn. 5 ["Governmental immunity is a jurisdictional question (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435), and thus is not subject to the rule that failure to raise a defense by demurrer or answer waives that defense. (Code Civ. Proc., § 430.80, subd. (a).)"]; see *Richardson-Tunnell v. Schools Ins. Program for Employees* (*SIPE*) (2007) 157 Cal.App.4th 1056, 1061; *Buford v. State of California* (1980) 104 Cal.App.3d 811, 826.)

Plaintiff relies on *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, at page 689 (*McMahan's*) to assert that in contrast to other governmental immunities, section 850.4 immunity is an affirmative defense that may be waived. *McMahan's* holds, without further elucidation, that the immunity afforded by section 850.4 "is considered an affirmative defense and must be pled and proven or is deemed waived." (*McMahan's*, at p. 689.) *McMahan's* was an inverse condemnation action arising from damage caused to the plaintiff's property by a broken water main. (*Id*. at p. 687.) On appeal, the city for the first time asserted it was immune from liability pursuant to section 850.4 because the water main was a fire protection facility. (*McMahan's*, at pp. 687-689.) *McMahan's* concluded the city waived the defense by not pleading it. (*Id.* at p. 689.)

In support of its holding, *McMahan's* cites *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, at page 747, and a government tort liability treatise. (*McMahan's*, *supra*, 146 Cal.App.3d at p. 689.) We discuss each in turn. *De La Rosa* does not involve section 850.4, but instead discusses whether the design immunity of former section 830.6 is an affirmative defense. (*De La Rosa*, at pp. 746-748.) Under former section 830.6, the public entity was immune from liability "for maintaining a dangerous condition of public property *as long as the maintenance conforms to the original plan or design*." (*De La Rosa*, at p. 747, italics added.) Thus, to trigger the

6

immunity, the public entity had to affirmatively show the dangerous condition alleged by the plaintiff conformed to a plan or design. There is no such required showing for the immunity under section 850.4, which applies, as alleged in this case, if the complained-of injury resulted from the condition of a firefighting facility. Therefore, *De La Rosa* does not appear to support the conclusion of *McMahan's* that section 850.4 operates as an affirmative defense.

Neither does the cited government tort liability treatise, which broadly states that "[s]tatutory immunities and limitations on liability are regarded as affirmative defenses" for purposes of pleading with particularity. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.76, p. 301.) All of the examples cited by the treatise involve immunities conditioned on factual showings of, for example, reasonableness, existence of a design, purpose of a road, and circumstances under which an emergency vehicle is operated. (*Ibid.*) It does not address a statute like section 850.4, which provides absolute, not qualified, immunity for public entities and public employees. (See *Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 602; see also Recommendation Relating to Sovereign Immunity, Number 1 – Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 862 (Recommendation) ["Section 850.4 provides for absolute immunity from liability for injury . . . from failure to properly maintain fire protection equipment or facilities"].)

Therefore, we disagree with the conclusion of *McMahan's* that the absolute governmental immunity under section 850.4 may be waived if not raised as an affirmative defense. Rather, the immunity under section 850.4, like that discussed in *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, at pages 1802 through 1804, required no affirmative showing on the part of the public entity or public employee defendant claiming the immunity. Thus, the section 850.4 immunity could be raised at any time and was not waived.

## 2.0  Applicability of Immunity

Plaintiff challenges the applicability of section 850.4 to her claims against defendants.  She does not appear to dispute that the base camp was a firefighting facility,[3] but argues instead that the *condition* of the base camp that caused her injuries was not one that affected the ability to fight a fire but was unrelated to fighting fires.  Thus, she contends, it does not trigger the statutory immunity of section 850.4.  We conclude plaintiff's proposed construction of section 850.4 is not supportable.

In construing section 850.4, we extend no deference to the trial court's interpretation, but instead review the question of law regarding statutory construction de novo.  (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.)  " 'Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.' "  (*Id.* at pp. 95-96.)  Where the language is clear, we do not stray from its plain meaning "unless a literal interpretation would result in absurd

---

[3]  Nor would such a contention likely withstand scrutiny given the broad interpretation courts have given the term "facility" in this context.  (*Heieck & Moran v. City of Modesto* (1966) 64 Cal.2d 229, 233 [closed valve in a city water system that prevented water from reaching a fire was a fire protection facility triggering immunity]; *New Hampshire Ins. Co. v. City of Madera* (1983) 144 Cal.App.3d 298, 303-305 [immunity even where water delivery system was not controlled by fire personnel]; *Lainer Investments v. Department of Water & Power* (1985) 170 Cal.App.3d 1, 8 [immunity where semiclosed valve was installed on private property]; *Cairns v. County of Los Angeles* (1997) 62 Cal.App.4th 330, 335-336 [closed road that fire personnel could not access when responding to a fire was a fire protection facility under § 850.4].)  Neither would it suit the plain meaning of the term "facilities" to construe it as excluding the base camp.  When section 850.4 was enacted, a facility was, in relevant part, "something that facilitates an action, operation, or course of conduct easier—[usually] used in [plural]" or "something (as a hospital) that is built, installed, or established to serve a particular purpose."  (Webster's Seventh New Collegiate Dict. (1963) p. 298, col. 2.)  To "facilitate" meant "to make easier."  (*Ibid.*)  Under these definitions, the base camp would qualify as a firefighting facility.  It was a physical location and operation that made fighting the Silver Fire easier and was established to serve that particular purpose.

consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)  And, "we are, absent contrary direction, bound to give the words the Legislature chose their usual and ordinary meaning." (*Bernard v. Foley* (2006) 39 Cal.4th 794, 807.)  Neither are we permitted to "insert what has been omitted, or . . . omit what has been inserted." (Code Civ. Proc., § 1858.)  But where "the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy" to discern the legislative intent. (*Coalition of Concerned Communities, Inc.*, at p. 737.)  Regardless, we construe the language in the context of the entire statutory framework, with consideration given to the policies and purposes of the statute. (*Jones v. Superior Court* (2016) 246 Cal.App.4th 390, 397.)

The statute at issue, section 850.4, is part of the Act, enacted in 1963 following a report of the California Law Revision Commission (the Commission). (§ 810, subd. (b); Cal. Gov. Tort Liability Practice (Cont.Ed.Bar 4th ed. 2017) Legislative Response: Government Claims Act, § 1.40, p. 24.)  Under the Act, " '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' (§ 815, subd. (a); see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 ['there is no common law tort liability for public entities in California . . . ']; *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1179 ['the intent of the Tort Claims Act is to confine potential governmental liability, not expand it'].)" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*).)  However, pursuant to the Act, public entities may be liable "for injuries caused by maintaining dangerous conditions on their property when the condition 'created a reasonably foreseeable risk of the kind of injury which was incurred' and either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition

9

in time to have taken preventive measures.  (§ 835; see *Cornette* [*v. Department of Transportation* (2001) 26 Cal.4th 63,] 66.)"  (*Hampton*, at pp. 347-348.)

Even where a dangerous condition is demonstrated, however, a public entity may prevail if a specific statutory immunity applies.  (See *Hampton*, *supra*, 62 Cal.4th at pp. 347-348.)  One such immunity is codified in section 850.4, which together with sections 850[4] and 850.2,[5] specifically limits the liability that can arise from a public agency's decisions and actions regarding the provision of fire protection and firefighting services.  Section 850.4, as mentioned above, provides that "[n]either a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires."

In construing the language of the statute, we note that with section 850.4, the Legislature apparently classified injuries into two groups:  (1) "any injury resulting from the condition of fire protection or firefighting equipment or facilities," and (2) subject to a specific exception, "any injury caused in fighting fires."  Use of the disjunctive "or" between the two clauses renders these two classes of injuries alternatives.  (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 622 ["The ' "ordinary and popular" ' meaning of the word 'or' is well settled.  [Citation.]  It has a disjunctive meaning:  'In its ordinary sense, the function of the word "or" is to mark an alternative. . . .' "].)  Only the latter prong is, on its face, limited to injuries that are sustained in the course of an active engagement in

_____

**4**  Section 850 states that "[n]either a public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection service."

**5**  Section 850.2 states that "[n]either a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities."

10

fighting fires.  And, there is nothing in the syntax of the statute to suggest that "in fighting fires" also modifies the first clause at issue here.  (See *In re Application of Roberts* (1910) 157 Cal. 472, 474 [where statute contains clauses connected by disjunctive, the language used in one clause does not affect or modify words used solely in other clause, but each clause "is to be construed as if it stood alone and were read in connection with the general words applying to all"].)  Thus, there is no language in the statute itself limiting the "condition of fire protection or firefighting equipment or facilities" to those related to the ability to fight fires.

Nonetheless, plaintiff asserts that a construction of section 850.4 that does not read "condition" as limited to conditions affecting the ability to fight fires is contrary to legislative intent.  We disagree.  The Act arose from a study of governmental tort liability prepared by the Commission.  The Commission's report on its study, Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at page 801, was submitted to the Legislature and is a significant source for ascertaining legislative intent.  The Commission also added a written comment to each new statute it proposed.  These comments were also before the Legislature and were approved by the Senate Judiciary Committee and the Assembly Ways and Means Committee as an expression of their intent.  (See *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, 831-832.)

As relevant to our construction of section 850.4, the Commission recommended that, "[e]xcept to the extent that public entities are liable under Vehicle Code Sections 17000 to 17004 for the tortious operation of vehicles, public entities and public personnel should not be liable for injuries caused in fighting fires *or in maintaining fire protection equipment. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability*; and firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable.  The liability created by the Vehicle Code for

11

tortious operation of emergency fire equipment should be retained, however, for such liability does not relate to the conduct of the actual firefighting operation." (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 828, italics added.)

The Commission proposed that section 850.4 be enacted to read: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires." (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 862.) The Commission's comment with respect to this section stated: "Section 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) *or from failure to properly maintain fire protection equipment or facilities. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability*; and firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable." (*Ibid*., italics added.)

That the Commission in its comment again separates injuries "caused in fighting fires" from those that result "from failure to properly maintain fire protection equipment and facilities" supports our interpretation of the language of section 850.4 viewing these two classes of injuries as distinct. Additionally, that the Commission did not suggest limiting the immunity related to maintenance of fire protection equipment or facilities to those instances where the failure to maintain equipment or facilities affects the firefighters' ability to fight fires means the plain language of the statute is not contrary to stated legislative intent. Thus, while it may be possible to infer some contrary intent in the recommendation of the Commission, its comment to section 850.4 supports an

12

interpretation of the plain language of the statute that is not limited to conditions of firefighting facilities and equipment that affect the ability to fight fires.

*Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349 (*Razeto*) came to the same conclusion. There, the plaintiffs sued public entities after vandals allegedly turned on a publicly-maintained fire hydrant causing a stream of water to be directed at the plaintiffs' house resulting in damage to the house and its contents. (*Id.* at pp. 350-351.) *Razeto* considered whether the trial court properly awarded summary judgment based on the conclusion that section 850.4 applied to immunize the defendants for injuries caused by firefighting equipment. (*Razeto*, at p. 351.) To that end, *Razeto* reviewed the legislative history of section 850.4. It noted that prior to 1961, public entities could be held liable for dangerous and defective property conditions, including "dangerous and defective fire department property." (*Razeto*, at pp. 351-352.) After sovereign immunity was generally eliminated by *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, at page 221, the Commission was engaged to develop legislation to preserve necessary sovereign immunity. (*Razeto*, at p. 352.)

*Razeto* noted that immunity for firefighting activities had not previously been extended to include defective or dangerous fire equipment when the injury did not occur during the fighting of a fire, and that it would seem to be inconsistent with the recommendations and policy rationale set forth in the Recommendation "to find that section 850.4 was designed to provide immunity for dangerous and defective fire protection equipment which causes injury or property damage *while not in use fighting fires*." (*Razeto*, *supra*, 88 Cal.App.3d at pp. 351-352, italics added.) Nonetheless, *Razeto* concluded, "[t]he [Commission's] comment to [section] 850.4 states in clear terms that immunity is to be provided for dangerous and defective fire protection equipment." (*Id.* at pp. 352-353.) "Hence, although there is an inferable contrary intent, the statute is clear and unambiguous. It explicitly provides sovereign immunity for any injury resulting

13

from the 'condition of fire protection or firefighting equipment.' In the face of that clear statutory language we are not at liberty to use a remotely inferable contrary legislative intention to show that a different meaning should be given to the statute." (*Id.* at p. 353.) Therefore, *Razeto* held, section 850.4 acted to immunize the public entity defendants from liability. (*Razeto*, at p. 353.)

*Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635 and *Potter v. City of Oceanside* (1981) 114 Cal.App.3d 564 do not persuade us otherwise. *Varshock* concerned whether section 850.4's other ground for imposing immunity—for "any injury caused in fighting fires"—barred recovery where firefighters unsuccessfully used a fire truck to attempt to rescue persons from a home involved in a wildfire. (*Varshock*, at pp. 642-643.) *Potter* involved a fire captain who was summoned to the scene where the plaintiff had broken a natural gas line while operating a trenching machine. When the plaintiff started the machine as directed by the fire captain, the escaping gas exploded. The sole issue on appeal was whether section 850.4's immunity for "injuries caused by fighting fires" applied. The Court of Appeal ruled it did not, as the negligence was the captain's directions, not the resulting fire. (*Potter*, at pp. 565-566.) Thus, both *Varshock* and *Potter* are inapposite to consideration of the scope of the immunity for injuries "resulting from the condition of fire protection or firefighting equipment or facilities" because neither interpreted that language.

We also disagree with plaintiff that our interpretation of the statute will lead to absurd results. She offers several examples of potential sympathetic factual scenarios, which are unavailing for two primary reasons. First, for many of the examples she proffers, there is an adequate incentive for firefighters to maintain the facilities and equipment to avoid the risk of potential injury. For example, if a group of visitors were injured while at the base camp by slipping in a puddle, or if a fuel tank were left in an unstable position and fell over, sparking an explosion, the firefighters would be at as

14

great a risk of injury as the visitors. Thus, the firefighters and public agencies are adequately incentivized to exercise care to avoid the occurrence of those potential risks. Second, her other proffered examples are generally remedied through other means. Most firefighters injured on the job in California would be able to recover for injuries incurred as a result of a "condition of fire protection or firefighting equipment or facilities" pursuant to the California Workers' Compensation and Insurance Act. (See § 814.2 [the immunities of the Act do not override the Workers' Compensation and Insurance Act].) Thus, if as plaintiff conjectures, a firefighter were electrocuted by faulty wiring while showering at the base camp or fire station or if a firefighter slipped on wet stairs at the firehouse, she generally would have an adequate alternate remedy.[6] Thus, we are not persuaded an unconstrained construction of the term "condition" in the first prong of section 850.4 leads to absurd results.

Moreover, while a broad construction of section 850.4 that provides immunity regardless of whether the nature of the condition affects the ability to fight fires may occasionally yield results that seem unjust, that unbridled construction is supported by the plain language of the statute and is not contradicted by other evidence of legislative intent. One must recall that immunity from tort liability does not deny that a tort occurred, but absolves the favored defendant from the resulting liability to reflect a public policy priority. (*Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698, 705.) Here, the Legislature intended to give fire protection agencies as much latitude as necessary to fulfill their mission. (See Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at pp. 827-829, 861-863.) If the Legislature believes the immunity sweeps too far, it has the power to tighten its scope. We will not assume its role.

---

[6] This is not true in this unusual case because plaintiff, as a federal employee, is not covered by the California Workers' Compensation and Insurance Act.

15

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)  **(*CERTIFIED FOR PUBLICATION*)**

_____/s/_____

BUTZ, Acting P. J.

We concur:


_____/s/_____

DUARTE, J.


_____/s/_____

HOCH, J.